J-S15043-16
J-S15044-16

| | |
|---|---|
| IN THE INTEREST OF: S.M.A., A MINOR : | IN THE SUPERIOR COURT OF |
| : | PENNSYLVANIA |
| : | |
| APPEAL OF: B.A., FATHER : | |
| : | No. 2387 EDA 2015 |
| : | |

Appeal from the Decree July 15, 2015,
in the Court of Common Pleas of Philadelphia County,
Family Court, at Nos.: CP-51-AP-0000329-2014
CP-51-DP-0001000-2011

| | |
|---|---|
| IN THE INTEREST OF: S.M.A., A MINOR : | IN THE SUPERIOR COURT OF |
| : | PENNSYLVANIA |
| : | |
| APPEAL OF: M.E.M., MOTHER : | |
| : | No. 2392 EDA 2015 |
| : | |

Appeal from the Decree July 15, 2015,
in the Court of Common Pleas of Philadelphia County,
Family Court, at Nos.: CP-51-AP-0000329-2014
CP-51-DP-0001000-2011

| | |
|---|---|
| IN THE INTEREST OF: S.J.M., A MINOR : | IN THE SUPERIOR COURT OF |
| : | PENNSYLVANIA |
| : | |
| APPEAL OF: M.E.M., MOTHER : | |
| : | No. 2393 EDA 2015 |
| : | |

Appeal from the Decree July 15, 2015,
in the Court of Common Pleas of Philadelphia County,
Family Court, at Nos.: CP-51-AP-0000217-2014
CP-51-DP-0000999-2011

BEFORE: BENDER, P.J.E., OLSON, AND PLATT[*], JJ.

MEMORANDUM BY PLATT, J.:                    **FILED APRIL 11, 2016**

---

[*]  Retired Senior Judge assigned to Superior Court.

In these related and consolidated appeals,[1] Appellant, M.E.M. (Mother), appeals the decree of the Court of Common Pleas of Philadelphia County, entered July 15, 2015, that terminated her parental rights to her daughter, S.J.M.,[2] born May 24, 2006, and the decree entered July 15, 2015, that terminated her parental rights to her daughter S.M.A., born November 7, 2010 (collectively Children). Appellant, B.A. (Father), appeals the decree of the Court of Common Pleas of Philadelphia County, entered July 15, 2015, that terminated his parental rights to his daughter, S.M.A. We affirm the decrees on the basis of the trial court opinions.

In its opinions, entered on October 14, 2015, in the appeal of Father, and October 15, 2014, in the appeal of Mother, the trial court fully and correctly sets forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them at length here.

For the convenience of the reader, we note briefly that on July 3, 2014, the Department of Human Services of Philadelphia County (DHS), filed its petitions to terminate Mother's parental rights to the Children and Father's parental rights to S.M.A. The trial court held a hearing on those petitions, which occurred over the course of three days, on April 6, 2015,

_____

[1] This Court consolidated 2392 EDA 2015 and 2393 EDA 2015, *sua sponte*, on September 10, 2015. **See** Pa.R.A.P. 513. 2387 EDA 2105 is a related case in that Appellant, B.A, is the father of one of the children in the consolidated cases.

[2] S.J.M.'s father, J.M., relinquished his parental rights voluntarily on April 9, 2014. (**See** Confirm Consent, 6/05/15).

June 5, 2015, and July 15, 2015. The trial court entered its decrees terminating Mother's and Father's parental rights, pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8) and (b), on July 15, 2015. Father's timely appeal followed on July 29, 2015.[3] Mother's timely appeal followed on August 4, 2015.[4]

Mother raises the following questions on appeal:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [M]other, M.E.M.[,] pursuant to 23 Pa.C.S.A. sections [sic] 2511(a)(1) where [M]other presented evidence that she substantially met her Family Service Plan ("FSP") objectives and tried to perform her parental duties[?]

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [M]other, M.E.M.[,] pursuant to 23 Pa.C.S.A. sections [sic] 2511(a)(2) where [M]other presented evidence that she has remedied her situation by taking parenting [classes], completing a Drug and Alcohol Assessment and competing a Mental Health Evaluation[?] Mother has the present capacity to care for her [C]hildren.

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [M]other, M.E.M.[,] pursuant to 23 Pa.C.S.A. sections [sic] 2511(a)(5) where evidence was provided to establish that [C]hildren were removed from the care of [F]ather and [M]other, and that [F]ather and [M]other are now capable of caring for their [C]hildren[?]

---

[3] Father timely filed his notice of appeal and statement of errors complained of on appeal on July 29, 2015; the trial court entered its opinion on October 14, 2015. *See* Pa.R.A.P. 1925(a), (b); *see also* Pa.R.A.P. 1925(a)(2)(i).

[4] Mother timely filed her notices of appeal and statements of errors complained of on appeal on August 4, 2015; the trial court entered its opinion on October 15, 2015. *See* Pa.R.A.P. 1925(a), (b); *see also* Pa.R.A.P. 1925(a)(2)(i).

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [M]other, M.E.M.[,] pursuant to 23 Pa.C.S.A. sections [sic] 2511(a)(8) where evidence was presented to show that [M]other is now capable of caring for [C]hildren since she has completed parenting classes and additional services were not needed[?] Additionally, [M]other completed her parenting capacity evaluation.

5. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [M]other, M.E.M.[,] pursuant to 23 Pa.C.S.A. sections [sic] 2511(b) where evidence was presented that established [C]hildren have a strong parental bond with [M]other and had lived with [M]other for the first part of their lives[?]

(Mother's Brief, at 7).

Father raises the following questions on appeal:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, B.A.[,] pursuant to 23 Pa.C.S.A. sections [sic] 2511(a)(1) where [F]ather presented evidence that he substantially met his FSP goals and tried to perform his parental duties[?]

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, B.A.[,] pursuant to 23 Pa.C.S.A. sections [sic] 2511(a)(2) where [F]ather presented evidence that he has remedied his situation by taking parenting [classes], anger management and receiving mental health treatment[?] Father has the present capacity to care for [S.M.A.].

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, B.A.[,] pursuant to 23 Pa.C.S.A. sections [sic] 2511(a)(5) where evidence was provided to establish that [S.M.A.] was removed from the care of [F]ather and [M]other, and that [F]ather is now capable of caring for [S.M.A.] [?]

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, B.A.[,] pursuant to 23 Pa.C.S.A. sections [sic] 2511(a)(8) where evidence was presented to show that [F]ather is now capable of caring for

[S.M.A.] since he has completed parenting [classes] and drug and alcohol treatment[?] Additionally, [F]ather completed his parenting capacity evaluation.

5. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, B.A.[,] pursuant to 23 Pa.C.S.A. sections [sic] 2511(b) where evidence was presented that established [S.M.A.] had a strong parental bond with [Father] and had lived with [Father] for the first part of her life[?]

(Father's Brief, at 7).

Our standard of review is as follows:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

- 5 -

***In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

The trial court terminated Mother's and Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b). In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
> >
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
> >
> > \* \* \*
> >
> > (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the

- 6 -

conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a), (b).

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In***

re T.F., 847 A.2d 738, 742 (Pa. Super. 2004) (citation and quotation marks

omitted). Further,

> A parent must utilize all available resources to preserve the
> parental relationship, and must exercise reasonable firmness in
> resisting obstacles placed in the path of maintaining the parent-
> child relationship. Parental rights are not preserved by waiting
> for a more suitable or convenient time to perform one's parental
> responsibilities while others provide the child with his or her
> physical and emotional needs.

In the Interest of K.Z.S., 946 A.2d 753, 759 (Pa. Super. 2008) (citation

omitted).

After a thorough review of the record, the briefs of the parties, the

applicable law, and the well-reasoned opinions of the trial court we conclude

that there is no merit to the issues Mother and Father have raised on appeal.

The trial court opinions properly dispose of the questions presented. (**See**

Opinion, 10/14/15, at 4-9 (finding that (1) Father failed to perform his

parental duties in the last six months immediately preceding filing of

petition; (2) Father has been unable to provide S.M.A. with essential

parental care, control, and subsistence necessary for her mental and

physical well-being since September 1, 2011; (3) Father has been incapable

and reluctant to assume his parental duties since S.M.A.'s removal on

September 1, 2011; (4) S.M.A. has been out of Father's care for forty-six

months, conditions leading to placement continue to exist, and termination

would best serve needs and welfare of S.M.A.; and (5) S.M.A. will not suffer

any irreparable harm by terminating Father's parental rights and it is in her

best interest to terminate Father's parental rights)); (Opinion, 10/15/15, at 4-11 (finding that (1) Mother failed to perform her parental duties during last six months preceding filing of petition; (2) Mother has been unable to provide Children with essential parental care control and subsistence necessary for their mental and physical well-being since September 2011; (3) Mother has been unable to assume her parental duties since Children were removed from home on September 1, 2011; (4) Children have been out of Mother's care for forty-six months, conditions leading to placement still exist, and termination would best serve needs and welfare of Children; and (5) Children will not suffer any irreparable harm by terminating Mother's parental rights and it is in their best interest to terminate her parental rights)). Accordingly, we affirm on the basis of the trial court's opinions.

Decrees affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/2016

IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
FAMILY COURT DIVISION

RECEIVED

2015 OCT 14 PM 2:30

PROPROTHY

In re: In the Interest of S.A.

: CP-51-DP-00001000-2011
: AP-51 -   · AP-0000329-2014
: 51-FN-558461-2009

APPEAL OF: B.A.  Father

: 2387 EDA 2015

**OPINION**

**Fernandes, J.:**

Appellant B.A. ("Father"), appeals from the order entered on July 15, 2015, granting the petition filed by the Department of Human Services of Philadelphia County ("DHS"), to involuntarily terminate Father's parental rights to S.A. ("Child") pursuant to the Adoption Act, 23 Pa.C.S.A. §2511 (a) (1), (2), (5), (8), and (b).  Lisa M. Visco, Esquire, counsel for Father, filed a timely Notice of Appeal with a Statement of Errors Complained Of pursuant to Rule 1925(b).

**Factual and Procedural Background**

On November 8, 2010, the Department of Human Services ("DHS") received a General Protective Services Report alleging that on November 7, 2010, Mother tested positive for Marijuana at Child's birth and that she had received minimal prenatal care. On November 10, 2010, the Child was discharged from the hospital. On November 12, 2010, In-Home Protective Services ("IHPS") were implemented through the Family Support Center to address parents' parenting skills. On May 20, 2011, DHS filed an urgent petition for the Child. Parents were non-compliant with IHPS. (N.T. 04/06/15, pgs. 8-9). The Child was adjudicated dependent on June 3, 2011. Child's physical custody remained with Father under DHS supervision. (N.T. 04/06/15, pg. 9).

The Child was removed from Father's care subsequent to the adjudication due to Father allowing mother unsupervised contact with the Child. Initially, Father refused to give up Child and his sibling to DHS for placement. Father was hiding the Child and sibling but eventually did deliver the Child to DHS for placement. (N.T. 04/06/15, pgs. 9-10). On September 1, 2011, Father brought the Child to DHS and an Order of Protective Custody was issued. On September 2, 2011, at a Shelter care hearing, the trial court ordered mother to move out of the home and not to have

unsupervised contact with the Child. The trial court also ordered the Child to be returned to Father's care. On September 6, 2011, another OPC was filed by DHS because Father was unable to be located, and he did not avail himself to pick up the Child. On September 8, 2011, at the Shelter Care hearing, the trial court found that returning the Child to Father's home was not in her best interest. The OPC was lifted, the temporary commitment to DHS was discharged and the Child was fully committed to DHS. Father's visitations were unsupervised and in the community. On November 4, 2011, at the Permanency Review hearing, Father was found in moderate compliance with his Family Service Plan ("FSP"). Father was referred to the CEU for assessment and a forthwith drug screen with a dual diagnosis. Father's visits were modified to supervised at the agency.

On January 17, 2012, at the Permanency Review hearing, Father was found minimally compliant with his FSP. The trial court ordered Father to be referred to the CEU. On February 21, 2012, Father's FSP objectives for Father were as follows: to participate in an evaluation for drug and alcohol, to comply with all treatment and recommendations, to maintain drug free status, to attend parenting classes, to sign authorizations to allow DHS to monitor Father's progress reports, to maintain a relationship with the Child through visitation. On March 27, 2012, at the Permanency Review hearing, Father was found in moderate compliance with his FSP. Father was again referred to the CEU and ordered to comply with his FSP objectives. On June 20, 2012, at the Permanency Review hearing, Father was found in moderate compliance with his FSP. Additionally, Father was ordered to attend the CEU, comply with CEU recommendations, and keep attending parenting classes. Father was also ordered to have a parent capacity/bonding evaluation. On July 27, 2012, Father's FSP objectives remained the same. On September 7, 2012, at the Permanency Review hearing, the trial court found Father minimally compliant with his FSP. Father was again referred to the CEU. On December 4, 2012, at the Permanency Review hearing, Father was found substantially compliant with his FSP.

On April 26, 2013, at the Permanency Review hearing, Father was found minimally compliant with his FSP. The trial court found that Father did not complete the second half of his parenting capacity evaluation and Father was permitted to have weekend supervised visits as arranged by the parties. Father was also ordered to continue attending Wedge North and comply with all his FSP objectives. On July 12, 2013, at the Permanency Review hearing, Father was found in

moderate compliance with his FSP. The trial court found that Father only completed his first portion of his parenting capacity evaluation, while he still had supervised visits at DHS on Saturdays. The trial court also ordered Father to reschedule his parenting capacity evaluation, to comply with the CEU, and to have a bonding evaluation. On October 11, 2013, at the Permanency Review hearing, the trial court found Father to be minimally compliant with his FSP. A CEU report of non-compliance was submitted to the trial court and Father was ordered to comply with CEU.

On February 26, 2014, at the Permanency Review hearing, Father was found minimally compliant with his FSP. The trial court found that Father attended only two out of ten visits, and he was not in compliance with the CEU. A CEU report of non-compliance was submitted to the trial court. On April 9, 2014, at the Permanency Review hearing, the trial court ordered Father to attend all the visits offered. On July 3, 2014, DHS filed petitions for termination of parental rights and goal change against the parents. On December 1, 2014, the trial court set April 6, 2015, as the date for a contested goal change and termination hearing. Testimony was taken on April 6, 2015, June 5, 2015, and July 15, 2015, Father's parental rights were terminated on July 15, 2015. On July 29, 2015, attorney for Father filed a notice of appeal.

**Discussion:**

On appeal, Father raises the following issues:

1. The trial court erred and/or abused its discretion by entering an order on July 15, 2015, involuntarily terminating the parental rights of Father, B.A. More specifically, the trial court abused its discretion as substantial, sufficient and credible evidence was presented at the time of trial which would have substantiated denying the petition for Goal Change Termination. The city has failed to meet its burden for termination by clear and convincing evidence under 23 Pa. C.S.A. 23 Pa.C.S.A. §2511 (a) (1), (2), (5) and (8) because Father presented evidence that he had substantially met his FSP goals and thereby remedied his situation

2. The trial court erred and/or abused its discretion by terminating the parental rights of Father, B.A. pursuant to 23 Pa.C.S.A. §2511 (b) where DHS failed to prove by clear and convincing evidence that involuntary terminating his parental rights best served the emotional needs and welfare of his Child. Evidence was presented that established the Child has lived with Father and had a bond with her Father.

Father did not appeal the change of goal to adoption; therefore, he has waived this issue on appeal.

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa.C.S.A. §2511 (a). The Adoption Act provides the following grounds for §2511 (a) (1):

**(a) General rule** - The rights of a parent, in regard to a child, may be terminated after a petition is filed on any of the following grounds:

(1) The parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, has either evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

In proceedings to involuntary terminate parental rights, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination. *In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064 (1994). To satisfy section (a) (1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. However, the six-month time period should not be applied mechanically; instead, the court must consider the whole history of the case. *In re B.N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004). The standard of clear and convincing evidence is defined as testimony that is so clear, direct weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of precise facts in issue. *In re D.J.S.*, 1999 Pa. Super. 214 (1999). In Pennsylvania, a parent's right to custody and rearing of his child is converted upon failure to fulfill his or her parental duties to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, and safe environment. *In re B.N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

DHS filed its petition to terminate Father's parental rights on July 3, 2014. (N.T. 04/06/15, pg. 31). During the last six months, immediately preceding the filing of the petition, Father has continuously failed to perform his parental duties. Nonetheless, as required in *In re B.N.M.*, the court considers the entire case history. DHS developed Father's goals and objectives as part of his FSP, and Father was aware of them. (N.T. 04/06/15, pgs. 10, 39, 40). Father's objectives were to comply with parenting classes, drug and alcohol treatment, parenting capacity evaluation, and

visitation. (N.T. 04/06/15, pgs. 22-23). Father was referred to the Village for parenting classes and it is alleged that Father completed his parenting class objectives. (N.T. 04/06/15, pg. 23). However, the record established that Father did not provide DHS with the documents verifying his attendance and completion of the parenting classes. (N.T. 04/06/15, pgs. 23, 48). The record also established Father lacks parenting skills as he is not able to assume the Child's care on his own, (N.T. 04/06/15, pg. 50). Drug and alcohol was also established as an FSP objective for Father due to information about his marijuana use. Father was ordered by the trial court to attend the CEU, whereby Father rendered positive drug screens. (N.T. 04/06/15, pgs. 24-25, 31-32). Father was recommended to attend drug and alcohol treatment at the Wedge. However, Father did not comply with his drug and alcohol treatment as recommended. (N.T. 04/06/15, pg. 24). Father disobey numerous court orders to attend the CEU for drug screen and assessment at the review hearings. However, Father finally complied and the CEU issued a report on February, 19, 2014, that Father did not need any drug and alcohol or mental health treatment. (N.T. 04/06/15, pg. 54). The record established that Father after several re-schedules and court orders did complete his parenting capacity evaluation. (N.T. 04/06/15, pgs. 25, 33, 62). However, Father has not comply with the visitation recommendation of the parenting capacity evaluation. (N.T. 04/06/15, pg. 60). In reference to Father's visitation, the trial court initially offered unsupervised visits, but visits were change to supervise due to the fact that Father was not returning the Child on time to foster parent. (N.T. 04/06/15, pgs. 25-26). During Father's unsupervised visits, he was allowing mother to have access to the Child whereby Father would be late returning the Child to foster parent. Shortly thereafter, Father stopped his own unsupervised visits in order to attend mother's supervised visits. By his own actions, Father limited his own visitation time with the Child. (N.T. 04/06/15, pgs. 49-50). Father has not been consistent in attending his visits and his interaction with the Child was not appropriate. Father would not use his visiting time to have a quality time with his Child. He would call relatives to speak with the Child in the cell phone. (N.T. 04/06/15, pgs. 28-30, 33). At the Permanency review hearing on February 26, 2014, the trial court found that Father attended two out of ten visits.

Before the termination petition was filed on July 3, 2014, Father was minimally complaint with his FSP on November 4, 2011, January 17, 2012, September 7, 2012, April 26, 2013, October 11, 2013, and February 26, 2014. Father's lack of compliance continued for at least six months prior to the filing of the termination petition. Father has failed to achieve his FSP objectives and his FSP

objectives have remained substantially the same throughout the life of the case. (N.T. 04/06/15, pgs. 26-27, 39, 48). As a result, the trial court found that Father evidenced a settled purpose of relinquishing his parental claim, and refused or failed to perform parental duties during the six-month period immediately preceding the filing of the petition as required by §2511 (a) (1) of the Adoption Act. DHS has met its burden of clear and convincing evidence.

The trial court also terminated Father's parental rights under the Adoption Act at 23 Pa.C.S.A. §2511(a) (2). This section of the Adoption Act includes, as a ground for involuntary termination of parental rights, the repeated and continued incapacity, abuse, neglect or refusal of the parent that causes the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. This ground is not limited to affirmative misconduct. It may include acts of refusal to perform parental duties but more specifically on the needs of the child. *Adoption of C.A.W.*, *683* A.2d 911, 914 (Pa. Super. 1996).

The record established that Father has been unable to provide his Child with the essential parental care, control, and subsistence necessary for her mental and physical well-being, since September 1, 2011, when Father brought the Child to DHS. Father has failed to provide verification of his parenting classes and consistency in visitation. (N.T. 04/06/15, pgs. 23, 48-50). Father parenting capacity evaluation recommended decreasing levels of visit supervision in order for reunification to occur. (N.T. 04/06/15, pg. 60). However, Father continues to have supervised visits. Since February 2014, Father has been offered thirty-three visits, but he only attended fifteen visits. (N.T. 07/15/15, pg. 4). Father has refused to do his parental duties to be part of his Child's life. As a result, forty-six months have not been enough for Father to achieve his remaining FSP objectives. (N.T. 07/15/15, pg. 38). Under Father's current circumstances, he is unable to remedy and will not remedy the causes of his incapacity in order to provide the Child with essential parental care, control or subsistence necessary for Child's physical and mental well-being. After months in foster care, the Child needs permanency, which Father cannot provide at this moment. Consequently, DHS has met its burden under §2511 (a) (2) of the Adoption Act.

The trial court also granted DHS' request for termination of parental rights under 23 Pa.C.S.A. §2511 (a) (5), whereby a child may be removed, by court or voluntary agreement, and placed with

an agency at least six months, if conditions which led to the placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services reasonably available to the parent are not likely to remedy the conditions leading to placement, and/or termination best serves the child's needs and welfare. DHS, as a child and youth agency, cannot be required to extend services beyond the period of time deemed as reasonable by the legislature or be subjected to herculean efforts. A child's life cannot be put on hold in hope that the parent will summon the ability to handle the responsibilities of parenting. *In re J.T.*, 817 A.2d 509 (Pa. Super. 2001). As a consequence, Pennsylvania's Superior Court has recognized that a child's needs and welfare requires agencies to work toward termination of parental rights when a child has been placed in foster care beyond reasonable temporal limits and after reasonable efforts for reunification have been made by the agency, that have resulted unfruitful. This process should be completed within eighteen months. *In re N.W.*, 851 A.2d 508 (Pa. Super. 2004).

The record indicated that Father has been unable to assume his parental duties since the Child's removal on September 1, 2011. Accordingly, Father's incapacity and reluctance to assume his parental responsibilities throughout the entire life of the case has led the Child to remain in foster care. The Child has been in foster care for forty-six months. It is clear that after all this time, Father has failed to provide verification of parenting classes, comply with the parenting capacity recommendations, and show consistency with visits. (N.T. 04/06/15, pgs. 23, 48-50, 60), (N.T. 07/15/15, pg. 4). Father has been given more than ample time to place himself in a position to be a parent to this Child, but he has failed to do so. On August 30, 2011, January 17, 2012, March 27, 2012, June 20, 2012, September 7, 2012, December 4, 2012, April 26, 2013, June 19, 2013, July 12, 2013, October 11, 2013, February 26, 2014, April 9, 2014, July 23, 2014, and April 6, 2015, the trial court found that DHS made reasonable efforts to reunify Father and Child. Father was aware of his FSP objectives. (N.T. 04/06/15, pgs. 10, 39, 40). It is in the best interest of the Child to have a stable, nurturing, and permanent environment. (N.T. 04/06/15, pgs. 50-51). Conditions that led to the placement of the Child continue to exist, and Father cannot remedy them within a reasonable period of time. DHS has met its burden under §2511 (a) (5) of the Adoption Act.

As to §2511 (a) (8) of 23 Pa.C.S.A., DHS also met its burden by clear and convincing evidence that Child has been out of Father's care for forty-six months, the conditions leading to the placement still exist, and termination would best serve the needs and welfare of the Child. Child

was placed in foster care due to Father's lack of compliance with In-Home Protective services and the fact that Father allowed Child's mother to have unsupervised visits. (N.T. 04/06/15, pgs. 8, 9). Still today, Father lacks parenting skills and is non-compliant with his parenting classes, and visitation. Despite the good faith efforts of DHS to make services available, it is in the best interest of the Child to terminate Father's parental rights.

As to the second element of Section 2511 (a) (8) that the conditions, which led to the Child's removal, continue to exist, DHS has also met its burden. As in *In re: Adoption of K.J.*, 938 A.2d 1128, 1133 (Pa. Super. 2009), a termination of parental rights under section 2511 (a) (8) does not require the court to evaluate a parent's willingness or ability to remedy which initially caused placement or the availability or efficacy of DHS services offered to Father. In this case, the trial court found that Father had failed to remedy the conditions that led to the removal of the Child, particularly his failure to provide verification of his parenting classes, comply with the parenting capacity evaluation recommendations as to visitation and consistency in visitation.

As to the third element of Section 2511 (a) (8), the party seeking termination must also prove by clear and convincing evidence that the termination is in the best interest of the child. The best interest of the child is determined after consideration of the needs and welfare of the child such as love comfort, security and stability. *In re Bowman*, 436 Pa. Super. 647, A.2d 217 (1994). See also *In re Adoption of T.T.B.*, 835 A.2d 387, 397 (Pa. Super. 2003). The Child has been in his respective pre-adoptive home for a long time. The Child is in a safe home and stable environment with foster parents providing for all her needs. The Child needs permanency. Termination of Father's parental rights and adoption would best serve the needs and welfare of the Child. The testimony of the DHS witnesses was credible.

Pursuant to 23 Pa.C.S.A. §2511 (b), the trial court must also consider what, if any bond exists between parent and child. *In re Involuntary Termination* of *C.W.S.M.* and *K.A.L.M.*, 839 A.2d 410, 415 (Pa. Super. 2003). The trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship". *In re Adoption of T.B.B.*, 387, 397 (Pa.Super.2003). In assessing the parental bond, the trial court is permitted to rely upon the observations and evaluations of social workers. *In re K.Z.S.*, 946 A.2d 753,762-763 (Pa. Super. 2008). In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis depends on the

circumstances of the particular case." *Id.* at 762-63. Also, under 23 Pa.C.S.A. §2511 (b), the rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical, if found to be beyond the control of the parent.

The record established that Child will not suffer any irreparable harm by terminating Father's parental rights, and it is in the best interest of the Child to terminate Father's parental rights. (N.T. 04/06/15, pgs. 50-51), (N.T. 06/05/15, pg. 20). Father and Child have a bond but is not a parent/child bond. (N.T. 04/06/15, pg. 55). It is not a bond worth saving. It is not a positive bond. It is only a unilateral bond. It should be a bio-relationship which emanates from Father being in full compliance with his visitation objective, which he is not. Child calls foster mother "mom" and they have an excellent relationship. (N.T. 06/05/15, pgs. 19, 26). Child does not ask for Father and Father is not engaging with Child. (N.T. 04/06/15, pgs. 45, 50, 53). Child has not experienced an adverse reaction as to Father's decreased visits. (N.T. 04/06/15, pg. 53). Father's parental rights are not being terminated on the basis of environmental factors. Child has been in foster care for too long and needs permanency.

It is in the best interest of the Child to be in a home that will keep her safe, provide stability, permanency and comfort for the Child needs and welfare. Child needs permanency after being in care for more than forty-six months. DHS witnesses were credible.

**Conclusion:**

For the aforementioned reasons, the court finds that DHS met its statutory burden by clear and convincing evidence regarding the termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511 (a) and (b). The court also finds that it will not cause irreparable harm to the Child to sever any bond, and it is in the best interest of the Child, since it would best serve her emotional needs and welfare. Accordingly, the order entered on July 15, 2015, terminating the parental rights of Father, B.A., should be affirmed.

By the court

Joseph Fernandes, J.

9 of 9

# IN THE COURT OF COMMON PLEAS
## FOR THE COUNTY OF PHILADELPHIA
### FAMILY COURT DIVISION

In re: In the Interest of S.A.

: AP-51-DP- AP-0000329-2014
: 51-FN-338461-2009

APPEAL OF: B.A.  Father

: 2387 EDA 2015

## PROOF OF SERVICE

I hereby certify that this court is serving, today Wednesday, October 14, 2015, the foregoing Opinion, by regular mail, upon the following person(s):

Kathleen Kim, Esquire
City of Philadelphia Law
Office of the City Solicitor
Department 1515 Arch Street, 16th Floor
Philadelphia, Pennsylvania 19102-1595
Attorney for D.H.S.

Tamika Washington, Esquire
100 South Broad Street, Suite 1523
Philadelphia, PA 19110
Child advocate

Lisa Marie Visco, Esquire
1800 JFK Blvd, Suite 300
Philadelphia, PA 19103
Attorney for Father

BY THE COURT:

Honorable Joseph L. Fernandes

RECEIVED
2016 OCT 15 PM 2:10
PROPROTHY

**IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
FAMILY COURT DIVISION**

In re: In the Interest of S.A. and S.J.M.

APPEAL OF: M.E.M. Mother

: CP-51-DP-0000999-2011
: CP-51-DP-0001000-2011
: CP-51-   AP-0000217-2014
: CP-51-   AP-0000329-2014
: 51-FN-338461-2009
:
: 2392/2393 EDA 2015

**OPINION**

**Fernandes, J.:**

Appellant M.E.M. ("Mother"), appeals from the order entered on July 15, 2015, granting the petition filed by the Department of Human Services of Philadelphia County ("DHS"), to involuntarily terminate Mother's parental rights to S.A. ("Child 1") and S.J.M. ("Child 2") collectively called ("Children") pursuant to the Adoption Act, 23 Pa.C.S.A. §2511 (a) (1), (2), (5), (8), and (b). Edward W. Louden, Esquire, counsel for Mother, filed a timely Notice of Appeal with a Statement of Errors Complained Of pursuant to Rule 1925(b).

**Factual and Procedural Background**

On November 8, 2010, the Department of Human Services ("DHS") received a General Protective Services Report alleging that on November 7, 2010, Mother tested positive for Marijuana at Child 1's birth; that Child 1 had received minimal prenatal care and that Mother had also another child, Child 2. On November 10, 2010, Child 1 was discharged from the hospital. On November 12, 2010, In-Home Protective Services ("IHPS") were implemented through the Family Support Center to address Mother's mental health, drug and alcohol problems, and parenting skills. In February 2011, ChildLink visited Mother's home and performed an intake for Child 1. On March 23, 2011, Mother attended an intake appointment at the Wedge Medical Center for drug and alcohol and mental health services. However, Mother failed to return to the Wedge Medical Center for further treatment. In April, 2011, Mother failed to attend parenting classes at Parent Action Network ("PAN"). On the same day, DHS and IHPS made a joint visit to Mother's home. DHS had received some allegations that Child 2 had exhibited possible mental health illness symptoms

and Mother had failed to schedule his appointment to be evaluated at Elwyn Institute. On May 20, 2011, DHS filed an urgent petition for the Children. Both Children were adjudicated dependent on June 3, 2011. Children's physical custody remained with their parents under certain conditions and limitations. At the same hearing, Mother was referred to the Clinical Evaluation Center ("CEU") for assessment and a forthwith drug screen with a dual diagnosis.

On August 30, 2011, at a Permanency Review hearing, the trial court ordered the Children to remain in Mother's physical custody with DHS supervision. The trial court found that Mother was non-compliant with the CEU and ordered Mother to comply with parenting classes. Additionally, the trial court ordered that if Mother tested positive for drugs or missed any appointments with IHPS or DHS, the Children would have to be placed in foster care. On August 30, 2011, Mother submitted a urine sample that resulted positive for Marijuana. Consequently, an attempt to retrieve the Children was made on August 30th and 31st of 2011, but Father refused to give up the Children to DHS for placement. Father was hiding the Child and sibling but eventually did deliver the Children to DHS for placement. (N.T. 04/06/15, pgs. 9-10). On September 1, 2011, father brought the Children to DHS and an Order of Protective Custody was issued. On September 2, 2011, at the Shelter Care hearing, the trial court ordered Mother to move out of the house and not to have unsupervised contact with Children. The trial court also ordered the Children to be returned to father's care. On September 6, 2011, another OPC was filed by DHS because father was unable to be located. The OPC was lifted and the Children were fully committed to DHS. The trial court also ordered Mother to have supervised visitation at the agency. On November 4, 2011, at the Permanency Review hearing, Mother was found non-complaint with her Family Service Plan ("FSP").

On January 17, 2012, at the Permanency Review hearing, Mother was found minimally compliant with her FSP. The trial court received a report of non-compliance from the CEU and ordered Mother to attend the CEU again. On February 21, 2012, Mother's FSP was reviewed with the following objectives: to participate in a drug and alcohol evaluation, to comply with all treatment and recommendations, to maintain drug free status, to attend parenting classes, to stabilize mental health problems, to comply with all the treatment and medicine prescribed, to sign authorizations to allow DHS to monitor Mother's progress reports, and to maintain a relationship with the Children through visitation. On March 27, 2012, at the Permanency Review hearing, Mother was

found in moderate compliance with her FSP objectives. Mother was found non-compliant with the CEU and ordered to comply with it. On June 20, 2012, at the Permanency Review hearing, Mother was found minimally compliant with her FSP. Additionally, Mother was ordered to comply with mental health treatment objectives and parenting classes. Mother was again referred to the CEU. On July 16, 2012, Child 2 was admitted to the Horsham Clinic, where he was diagnosed as suffering from attention deficit hyperactivity disorder ("ADHD") combined type. On July 27, 2012, Mother's FSP objectives remained the same. On September 7, 2012, at the Permanency Review hearing, the trial court found Mother minimally compliant with her FSP. Mother's visitations remained supervised at the agency. The trial court found that Mother did complete parenting classes and she was again referred to the CEU. On December 4, 2012, at the Permanency Review hearing, Mother was found substantially compliant with her FSP. She was also ordered to attend a parenting capacity evaluation, the CEU and comply with all CEU recommendations.

On April 26, 2013, at the Permanency Review hearing, Mother was found minimally compliant with her FSP. Mother was referred to the CEU and ordered to comply with her FSP. Mother's visits remained supervised but decreased to monthly. On June 19, 2013, Mother's FSP objectives were reviewed and they remained the same. On July 12, 2013, at the Permanency Review hearing, Mother was found minimally complaint with her FSP. Mother's visits remained monthly supervised at the agency and the trial court found that Mother only completed her first portion of her parenting capacity evaluation, Mother was referred to the CEU and ordered to have a bonding evaluation. On September 13, 2013, Mother participated in a parenting capacity evaluation at Assessment and Treatment Alternatives ("ATA"). Mother stated that she had not used drugs since December 2012, and that Child 2's behavioral issues were the result of the fact that Child 2 was not in her care. On October 11, 2013, at the Permanency Review hearing, the trial court found Mother minimally compliant with her FSP. Mother did not comply with her parenting capacity evaluation recommendations and attended two visits out of four. A CEU report of non-compliance was also submitted into evidence.

On February 26, 2014, at the Permanency Review hearing, Mother was found minimally compliant with her FSP. The trial court found that Mother did not comply with her mental health services thru the Wedge since November 29, 2013. Mother only attended 2 out of ten visits. On April 9, 2014, at the Permanency Review hearing, the trial court found that Mother attended all four visits

offered. However, Mother had to be redirected during one visit and arrived late to every visit. On July 3, 2014, DHS filed its petitions for goal change and termination of parental rights. On December 1, 2014, the trial court set April 6, 2015, as the date for a contested termination and goal change hearing. Testimony was taken on April 6, 2015, June 5, 2015, and July 15, 2015. Mother's parental rights were terminated on July 15, 2015. On August 4, 2015, attorney for Mother filed a notice of appeal.

**Discussion:**

On appeal, Mother raises the following issues:

1. The trial court erred and/or abused its discretion by entering an order on July 15, 2015, involuntarily terminating the parental rights of Mother, M.E.M. More specifically, the trial court abused its discretion as substantial, sufficient and credible evidence was presented at the time of trial, which would have been substantiated denying the petition for Goal Change and Involuntary Termination of parental rights. The city has failed to meet its burden for termination by clear and convincing evidence under 23 Pa. C.S.A. 23 Pa.C.S.A. §2511 (a) (1), (2), (5) and (8) because Mother presented evidence that he had substantially met his FSP goals and thereby remedied his situation.

2 The trial court erred and/or abused its discretion by terminating the parental rights of Mother, M.E.M. pursuant to 23 Pa.C.S.A. §2511 (b) where DHS failed to prove by clear and convincing evidence that involuntary terminating her parental rights best served the emotional needs and welfare of her Children. Evidence was presented that established the Children have lived with Mother and had a bond with their Mother.

Mother did not appeal the change of goal to adoption; therefore, she has waived this issue on appeal.

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa.C.S.A. §2511 (a). The Adoption Act provides the following grounds for §2511 (a) (1):

**(a) General rule -** The rights of a parent, in regard to a child, may be terminated after a petition is filed on any of the following grounds:

(1) The parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, has either evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

In proceedings to involuntary terminate parental rights, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination. *In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064 (1994). To satisfy section (a) (1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. However, the six-month time period should not be applied mechanically; instead, the court must consider the whole history of the case. *In re B.N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004). The standard of clear and convincing evidence is defined as testimony that is so clear, direct weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of precise facts in issue. *In re D.J.S.*, 1999 Pa. Super. 214 (1999). In Pennsylvania, a parent's right to custody and rearing of his child is converted upon failure to fulfill his or her parental duties to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, and safe environment. *In re B.N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

DHS filed its petition to terminate Mother's parental rights on July 3, 2014. (N.T. 04/06/15, pg. 31). During the last six months, immediately preceding the filing of the petition, Mother has continuously failed to perform her parental duties. Nonetheless, as required in *In re B.N.M.*, the court considers the entire case history. DHS developed Mother's goals and objectives as part of her FSP, and Mother was aware of them. (N.T. 04/06/15, pgs. 10, 39-40). Mother's objectives were to attend mental health services, drug and alcohol, parenting classes, to have a parenting capacity evaluation, and attend visitations. (N.T. 04/06/15, pgs. 10-11). As to Mother's mental health, Mother indicated she suffered from depression and DHS referred her to mental health services. (N.T. 04/06/15, pg. 8). Up until October 2013, Mother disobeyed all court orders to attend mental health and drug alcohol services. (N.T. 04/06/15, pgs. 11, 12, 18). Eventually, Mother did go to the CEU for drug screens and mental assessment and by October 2013, she did not need to go for CEU or mental health services. (N.T. 04/06/15, pgs. 40-44). As to Mother's parenting classes, Mother was referred to the Village and it was alleged that she completed

parenting classes. (N.T. 04/06/15, pg. 12). However, the record established that Mother was non-compliant and never provided documentation verifying successful completion of parenting classes, despite DHS social worker's request for such documents. (N.T. 04/06/15, pgs. 12, 42). Additionally, no certificate of completion was ever found in Mother's file at the Village. (N.T. 04/06/15, pg. 42). The record established that Mother's behavior during visitations has revealed Mother's lack of parental skills such as raising inappropriate issues and making statements to the Children during visitation such as "I am your Mother". (N.T. 06/05/15, pg. 15). It should also be noted that Mother showed inappropriate behavior in the court room. (N.T. 07/15/15, pg. 26). Mother was also ordered to have a parenting capacity evaluation, which she completed. (N.T. 04/06/15, pgs. 13, 48, 62). Nevertheless, Mother did not follow all the recommendations contained in the parenting capacity evaluation, specifically those requiring compliance with her visitations. (N.T. 04/06/15, pg. 61). In fact, Mother reveal a settled intent to not perform parental duties when she failed to sign consent forms for Child 2 to receive mental health services. (N.T. 04/06/15, pg. 15). Furthermore, Mother's lack of attendance at her visits had a negative impact on Child 2. Child 2 had acting out episodes when Mother failed to come to visits. (N.T. 04/06/15, pgs. 16-17). As to Mother's visitations, the Permanency Review orders and testimony established that visits were supervised throughout the entire life of the case. (N.T. 04/06/15, pg. 13). Mother has been inconsistent with her visitations. (N.T. 06/05/15, pg. 12). Due to Mother's lack of attendance with her visits and tardiness, visits were reduced from weekly to bi-weekly. (N.T. 04/06/15, pg. 13). Even after the termination petition was filed on July 3, 2014, between July 3, 2014 and June 5, 2015, Mother was offered thirty visits and attended only fourteen. (N.T. 06/05/15, pg. 13). Since April 6, 2015, and June 5, 2015, Mother did not attend any of the four visits offered. (N.T. 06/05/15, pg. 14). Lack of attendance and tardiness at her visits continues to be an issue for Mother. (N.T. 06/05/15, pg. 12).

Throughout the life of the case, there were only two occasions whereby Mother was more than minimally compliant with her FSP, March 27, 2012, she had substantial compliance and December 4, 2012, she was moderately compliant. The trial court found Mother to be minimally compliant with her FSP on November 4th of 2011; on January 17th and June 20th of 2012, April 26th, July 12th and October 11th of 2013; and February 26th of 2014. Mother's lack of compliance continued for at least six months prior to the filing of the termination petition. Mother has failed to achieve her FSP goals during the life of the case and her FSP objectives have remained substantially the same

throughout the life of the case. (N.T. 04/06/15, pgs. 39, 40). As a result, the trial court found that Mother evidenced a settled purpose of relinquishing her parental claim, and refused or failed to perform parental duties during the six-month period immediately preceding the filing of the petition as required by §2511 (a) (1) of the Adoption Act. DHS has met its burden of clear and convincing evidence.

The trial court also terminated Mother's parental rights under the Adoption Act at 23 Pa.C.S.A. §2511(a) (2). This section of the Adoption Act includes, as a ground for involuntary termination of parental rights, the repeated and continued incapacity, abuse, neglect or refusal of the parent that causes the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. This ground is not limited to affirmative misconduct. It may include acts of refusal to perform parental duties but more specifically on the needs of the child. *Adoption of C.A.W., 683* A.2d 911, 914 (Pa. Super. 1996).

The record established that Mother has been unable to provide her Child with the essential parental care, control, and subsistence necessary for their mental and physical well-being, since September 1, 2011, when Mother brought the Children to DHS and an Order of Protective Custody was issued. Mother has failed to successfully complete all her FSP objectives, mainly visits with Children and parenting classes. As a result, forty-six months have not been enough to achieve consistence unsupervised visitation and appropriate parenting skills. (N.T. 04/06/15, pgs. 39-40). Mother's barrier to reunification is her refusal to be consistent with visiting the Children and her parenting skills. (N.T. 04/06/15, pg. 40). Even when it was needed for Mother to engage in signing consents for Child 2 to receive mental health services, Mother failed to perform after agreeing to attend the appointment. (N.T. 04/06/15, pg. 15). Due to Mother's lack of consistency and habitual tardiness her visits were always supervised and were reduced from weekly to bi-weekly. (N.T. 04/06/15, pgs. 12-13, 43). Mother's own parenting capacity evaluation recommends that Mother demonstrate consistency of visitation by greater than three months. Once the consistency is achieved then the recommendation was for the frequency and duration of visits to increase. (N.T. 04/06/15, pg. 61). Between July 3, 2014 and June 5, 2015, Mother's consistency in visits has actually regressed. Mother was offered thirty visits and attended only fourteen. (N.T. 04/06/15, pgs. 12-14). Under Mother's current circumstances, she is unable to remedy the causes of her incapacity in order to

provide the Children with essential parental care, control or subsistence necessary for their physical and mental well-being. After months in foster care, Children need permanency, which Mother cannot provide at this moment. Consequently, DHS has met its burden under §2511 (a) (2) of the Adoption Act.

The trial court also granted DHS request for termination of parental rights under 23 Pa.C.S.A. §2511 (a) (5), whereby a child may be removed, by court or voluntary agreement, and placed with an agency at least six months, if conditions which led to the placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services reasonably available to the parent are not likely to remedy the conditions leading to placement, and/or termination best serves the child's needs and welfare. DHS, as a child and youth agency, cannot be required to extend services beyond the period of time deemed as reasonable by the legislature or be subjected to herculean efforts. A child's life cannot be put on hold in hope that the parent will summon the ability to handle the responsibilities of parenting. *In re J.T.*, 817 A.2d 509 (Pa. Super. 2001). As a consequence, Pennsylvania's Superior Court has recognized that a child's needs and welfare requires agencies to work toward termination of parental rights when a child has been placed in foster care beyond reasonable temporal limits and after reasonable efforts for reunification have been made by the agency, that have resulted unfruitful. This process should be completed within eighteen months. *In re N.W.*, 851 A.2d 508 (Pa. Super. 2004).

The record indicated that Mother has been unable to assume her parental duties since the Children were removed from Mother's home on September 1, 2011. Accordingly, Mother's incapacity and reluctance to assume her parental responsibilities throughout the entire life of the case has led the Children to remain in foster care. Children have been in foster care for forty-six months. After all this time, Mother has failed to comply with her parenting classes, parental capacity recommendations as to visits and visitation consistency. (N.T. 04/06/15, pgs. 12, 13, 43, 61), (N.T. 06/05/15, pgs. 12-14),. Mother has been given more than ample time to place herself in a position to be a parent to these Children, but she has failed to do so. On August 30, 2011, January 17, 2012, March 27, 2012, June 20, 2012, September 7, 2012, December 4, 2012, April 26, 2013, June 19, 2013, July 12, 2013, October 11, 2013. February 26, 2014, April 9, 2014, July 23, 2014, April 6, 2015, the trial court found that DHS made reasonable efforts to reunify Mother and Children. Mother was aware of her FSP objectives. (N.T. 04/06/15, pgs. 10, 39-40). It is in the

best interest of the Children to have a stable, nurturing, and permanent environment. Conditions that led to the placement of the Children continue to exist, and Mother cannot remedy them within a reasonable period of time. DHS has met its burden under §2511 (a) (5) of the Adoption Act.

As to §2511 (a) (8) of 23 Pa.C.S.A., DHS also met its burden by clear and convincing evidence that Children have been out of Mother's care for forty-six months, the conditions leading to the placement still exist, and termination would best serve the needs and welfare of the Children. Children have been continuously under DHS custody for a period of forty-six months. Children were placed in foster care due to Mother's lack of compliance with In-Home Protective services. (N.T. 04/06/15, pg. 8). Throughout the life of this case, Mother barriers to reunification has been her lack of consistence continuous visitation and parenting skills. After forty-six months, Mother is non-compliant with her parenting classes, parental capacity recommendations as to visitation, and visitations consistency. (N.T. 04/06/15, pgs. 12-13, 43, 61), (N.T. 06/05/15, pgs. 12-14), (N.T. 07/15/15, pgs. 4). Despite the good faith efforts of DHS to make services available, it is in the best interest of the Children to terminate Mother's parental rights.

As to the second element of Section 2511 (a) (8) that the conditions, which led to the Children's removal, continue to exist, DHS has also met its burden. As in *In re: Adoption of K.J.,* 938 A.2d 1128, 1133 (Pa. Super. 2009), a termination of parental rights under section 2511 (a) (8) does not require the court to evaluate a parent's willingness or ability to remedy which initially caused placement or the availability or efficacy of DHS services offered to Mother. In this case, the trial court found that Mother had failed to remedy the conditions that led to the removal of the Children, particularly her failure to comply with her parenting classes, and visits.

As to the third element of Section 2511 (a) (8), the party seeking termination must also prove by clear and convincing evidence that the termination is in the best interest of the children. The best interest of the children is determined after consideration of the needs and welfare of the children such as love comfort, security and stability. *In re Bowman,* 436 Pa. Super. 647, A.2d 217 (1994). See also *In re Adoption of T.T.B.,* 835 A.2d 387, 397 (Pa. Super. 2003). The Children have been in their respective pre-adoptive home for a long time. The Children are in a safe home and stable environment with foster parents providing for all their needs. The Children need permanency. Termination of Mother's parental rights and adoption would best serve the needs and welfare of the Children. The testimony of the DHS witnesses was unwavering and credible.

Pursuant to 23 Pa.C.S.A. §2511 (b), the trial court must also consider what, if any bond exists between parent and child. *In re Involuntary Termination* of *C.W.S.M.* and *K.A.L.M.,* 839 A.2d 410, 415 (Pa. Super. 2003). The trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship". *In re Adoption of T.B.B.,* 387, 397 (Pa.Super.2003). In assessing the parental bond, the trial court is permitted to rely upon the observations and evaluations of social workers. *In re K.Z.S.,* 946 A.2d 753,762-763 (Pa. Super. 2008). In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis depends on the circumstances of the particular case." *Id.* at 762-63. Also, under 23 Pa.C.S.A. §2511 (b), the rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical, if found to be beyond the control of the parent.

The record established that Children will not suffer any irreparable harm by terminating Mother's parental rights, and it is in the best interest of the Children to terminate Mother's parental rights. (N.T. 06/05/15, pgs. 16-17, 19-20). Mother and Children have a bond but it is not a parent/child bond. (N.T. 06/05/15, pg. 16). When Mother visits Child 1, Child 1 does not react emotionally and she simply says "hi". (N.T. 06/05/15, pg. 25). Child 1 also does not include Mother in her games, and when Mother leaves Child 1 does not cry. (N.T. 06/05/15, pg. 25). Child 1 calls Mother by her name and does not ask for her Mother. (N.T. 04/06/15, pgs. 45, 51), (N.T. 06/05/15, pg. 28). Conversely, Child 1 calls foster mother "mom" and gravitates towards foster parent. (N.T. 04/06/15, pgs. 51-52), (N.T. 06/05/15, pgs. 25, 26). Child 1 has been with her current foster Mother for one year. (N.T. 04/06/15, pg. 52). As to Mother and Child 2, Child 2 is very cold with Mother at visits. Child 2 calls Mother by her first name. (N.T. 04/06/15, pg. 21). Child 2 does not hug Mother, and when Mother leaves visit he goes directly to foster mother. (N.T. 06/05/15, pg. 17, 24). During visitations, Child 2 spends most of the time playing with the cell phone and does not interact with his Mother. (N.T. 06/05/15, pg. 16). Child 2 has been with his current foster parent for eighteen months, and they have a very strong bond. He calls his foster parent "mom". (N.T. 06/05/15, pg. 24), (N.T. 04/06/15, pg. 51). Child 2 has special needs, such as mental health services, takes medications, and receives TSS services at school. (N.T. 04/06/15, pg. 15), (N.T. 06/05/15, pg. 17). Foster parent provides for Child 2's daily and special needs, and has him involved in extracurricular activities. (N.T. 06/05/15, pgs. 17, 18, 24, 25). Child 2's behavior has improved in foster care and it is stable. (N.T. 06/05/15, pgs. 18-19). Mother's parental rights are

not being terminated on the basis of environmental factors. Children have been in foster care for too long and need permanency.

It is in the best interest of the Children to be in a home that will keep them safe, provide stability, permanency and comfort for the Children's needs and welfare. Children need permanency after being in care for forty-six months. DHS witnesses were credible.

**Conclusion:**

For the aforementioned reasons, the court finds that DHS met its statutory burden by clear and convincing evidence regarding the termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511 (a) and (b). The court also finds that it will not cause irreparable harm to the Children to sever any bond, and it is in the best interest of the Children, since it would best serve their emotional needs and welfare. Accordingly, the court order entered on July 15, 2015, terminating the parental rights of Mother, M.E.M., should be affirmed.

By the court

Joseph Fernandes, J.

IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
FAMILY COURT DIVISION

In re: In the Interest of S.A. and S.J.M.

: CP-51-DP-0000999-2011
: CP-51-DP-0001000-2011
: AP-51-DP- AP-0000217-2014
: AP-51-DP- AP-0000329-2014
: 51-FN-338461-2009
:
APPEAL OF: M.E.M.  Mother                    : 2392/2393 EDA 2015

PROOF OF SERVICE

I hereby certify that this court is serving, today Wednesday, October 15, 2015, the foregoing Opinion, by regular mail, upon the following person(s):

Kathleen Kim, Esquire
City of Philadelphia Law
Office of the City Solicitor
Department 1515 Arch Street, 16th Floor
Philadelphia, Pennsylvania 19102-1595
Attorney for D.H.S.

Tamika Washington, Esquire
100 South Broad Street, Suite 1523
Philadelphia, PA 19110
Child advocate

Edward W. Louden, Esquire
1515 Market Street, Suite 1210
Philadelphia, PA 19102
Attorney for Mother

BY THE COURT:

_____
Honorable Joseph L. Fernandes