J-S93031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.J.E., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.E., MOTHER | No. 1142 EDA 2016 |

Appeal from the Decree March 2, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at Nos.: CP-51-AP-0000589-2014
CP-51-DP-0001622-2013
FID# 51-FN-459064-2009

BEFORE: DUBOW, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JANUARY 23, 2017**

Appellant, S.E. (Mother), appeals from the decree granting the petition filed by the Philadelphia Department of Human Services (DHS) for the involuntary termination of her parental rights to A.J.E. (Child). We affirm on the basis of the trial court's opinion.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them here.

In her brief, Mother raises the following five questions for our review:

_____

[*] Retired Senior Judge assigned to the Superior Court.

     1.   Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. sec. 2511(a)(1) without clear and convincing evidence of [M]other's intent to relinquish her parental claim or refusal to perform her parental duties[?]

     2.   Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. sec. 2511(a)(2) without clear and convincing evidence of [M]other's present incapacity to perform parental duties[?]

     3.   Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. sec. 2511(a)(5) without clear and convincing evidence to prove that reasonable efforts were made by [the] Department of Human Services to provide [M]other with additional services and that the conditions that led to placement of the [C]hild continue to exist[?]

     4.   Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. sec. 2511(a)(8) without clear and convincing evidence that the conditions that led to placement of the [C]child continue to exist when [M]other presented evidence of compliance with the goals and objectives of her family service plan[?]

     5.   Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. sec. 2511(b) without clear and convincing evidence that there is no parental bond between [M]other and [C]hild and that termination would serve the best interest of the [C]hild[?]

(Mother's Brief, at 7).[1]

---

[1] It bears noting that counsel for Mother failed to specify which subsections of the statute were being challenged in the statement of errors.  (**See** Statement of Matters [sic], 4/01/16; **see also** Pa.R.A.P. 1925(a)(2)(i). "The Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge."  Pa.R.A.P. 1925(b)(4)(ii).  We could conclude that all

*(Footnote Continued Next Page)*

In reviewing an order involving termination of parental rights, our scope of review is broad, and all the evidence as well as the hearing court's factual and legal determinations will be considered. *In re N.C.*, 763 A.2d 913, 917 (Pa. Super. 2000). The standard of review is limited to determining whether the decree of the lower court is supported by competent evidence and whether it gave adequate consideration to the effect of such a decree on the welfare of the child. *Id.* (citing *Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064 (1994)).

In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re Julissa O.*, 746 A.2d 1137, 1139 (Pa. Super. 2000) (quoting *In re Adoption of Atencio*, 650 A.2d at 1066) (citations omitted).

*In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003).

In terminating the rights of a parent, the court must give primary consideration to the developmental, physical and emotional needs and welfare of the child. 23 Pa.C.S.A. § 2511(b); *In re Adoption of Charles E.D.M.,* 550 Pa. 595, 708 A.2d 88, 92 (1998). Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result. *In re Adoption of Atencio, supra,* 650 A.2d at 1066

*(Footnote Continued)* ─────────────

such issues were waived. *See* Pa.R.A.P. 1925(b)(4)(vii). However, we decline to find waiver, in the interest of judicial economy.

- 3 -

(Pa. 1994); *In re Adoption of B.D.S.,* 494 Pa. 171, 431 A.2d 203, 206 (1981).

*Id.* at 1123.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court we conclude that there is no merit to the issues Mother has raised on appeal. The trial court opinion properly disposes of the questions presented. (*See* Trial Court Opinion, 6/02/16, at 4-13) (concluding: (1) trial court properly terminated Mother's parental rights where record contains clear and convincing evidence that Mother is not ready, willing or able to parent Child, and has failed to do so for a period of at least six months immediately preceding the filing of the petition; (2) testimony of DHS witnesses was unwavering and credible; (3) clear and convincing evidence established that there was no parental bond, and termination of Mother's parental rights would not destroy an existing beneficial relationship; and (4) change of permanency goal from reunification to adoption was proper.). Accordingly, we affirm on the basis of the trial court's opinion.

Decree affirmed.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/23/2017

# IN THE COURT OF COMMON PLEAS
# FOR THE COUNTY OF PHILADELPHIA
# FAMILY COURT DIVISION

In the Interest of A.E., a Minor      :      CP-51-DP-0001622-2013

     :      CP-51-AP-0000589-2014

     :

     :      FID: 51-FN-459064-2009

     :

APPEAL OF: S.E., Mother      :      1142 EDA 2016

**OPINION**

**Fernandes, J.:**

Appellant S.E. ("Mother") appeals from the order entered on March 2, 2016, granting the petition filed by the Philadelphia Department of Human Services ("DHS"), to involuntarily terminate Mother's parental rights to A.E. ("Child") pursuant to the Adoption Act, 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b). Lawrence O'Connor, Esq., counsel for Mother, filed a timely Notice of Appeal with a Statement of Matters Complained of on Appeal pursuant to Rule 1925(b).[1]

**Factual and Procedural Background:**

The family in this case became known to DHS on March 25, 2013, when DHS received a General Protective Services ("GPS") report that Mother was neglecting Child. DHS visited Mother on April 1, 2013, and Mother admitted to drinking alcohol and using marijuana and cocaine. On April 25, 2013, DHS implemented In-Home Protective Services ("IHPS") in Mother's home. On June 14, 2013, DHS received a GPS report that Mother used crack cocaine in Child's presence, that Child had been left home alone at night, and that Child slept on the floor. On July 9, 2013, DHS visited the home and found Child alone. DHS recommended that Mother place Child in the care of Q.M., ("Godmother") Child's godmother and Mother's paramour. Child was adjudicated dependent on August 15, 2013, fully committed to DHS and placed in the care of Godmother. In January 2014, Child was removed from Godmother's home and placed in foster care. The court ordered that Child not be returned to Godmother's care. On March 20, 2014, Mother was arrested

---

[1] The trial court requested the Notes of Testimony on April 4, 2016. Subsequent requests were made on May 12, 2016, May 17, 2016 and May 24, 2016. The trial court received Notes of Testimony on May 26, 2016.

and charged with a number of burglary-related offenses. Mother plead guilty to burglary and forgery on June 17, 2014, and was incarcerated. Mother was sentenced to twenty-three months imprisonment and five years' probation. On November 3, 2014, DHS filed a petition to involuntarily terminate Mother's parental rights.

Following a number of continuances requested by Mother, the court heard the termination and goal change trial on March 2, 2016. The previously-assigned DHS social worker testified that DHS had developed a Family Service Plan ("FSP") for Mother with objectives of taking parenting classes, attending drug and alcohol and mental health treatment, obtaining appropriate housing and attending scheduled visits with Child. (N.T. 3/2/16, pgs. 8-9). Child had been adjudicated dependent because Mother was about to lose her transitional housing for non-compliance with the transitional program, and Child would have been left homeless. (N.T. 3/2/16, pg. 7). The prior DHS social worker had referred Mother for parenting classes, dual diagnosis assessment at the Clinical Evaluation Unit ("CEU") and housing services at the Achieving Reunification Center ("ARC"). (N.T. 3/2/16, pgs. 8-9). Mother had originally had liberal visits supervised by Godmother, but after Child was removed because Godmother struck Child, visits were changed to weekly supervised at the agency. (N.T. 3/2/16, pgs. 10-12). Child was then placed with maternal great-aunt ("Aunt"). Mother was imprisoned from April 2014 onwards. Mother was always able to arrange visits at the prison. Aunt set up some visits for Mother and Child, and Mother attended several of these visits. For other scheduled visits, Mother rejected the visitation. (N.T. 3/2/16, pgs. 12, 14, 15). While in prison Mother began parenting classes as well as drug and alcohol and mental health treatment, but never completed any of these programs. (N.T. 3/2/16, pgs. 19, 26-27). Mother never completed housing or parenting, and did not have employment necessary to support Child. (N.T. 3/2/16, pgs. 22, 23). The current DHS social worker testified that Child was removed from Aunt's care in July 2015, because Aunt was striking Child. Child was placed with unrelated Foster Parents. (N.T. 3/2/16, pg. 32). Mother's FSP goals upon her release from prison were the same as before, with the addition of domestic violence counselling. Mother re-engaged in drug and alcohol treatment on December 18, 2014, but soon stopped attending and was discharged in July 2015. Following Mother's discharge Mother claimed to the social worker that she was still attending. (N.T. 3/2/16, pgs. 34-36). Mother re-engaged in drug and alcohol treatment on December 1, 2015. (N.T. 3/2/16, pg. 44). Mother's CEU report showed that she had

attended and taken three drug screens, which were all negative. However one of these negative screens showed extremely high traces of cocaine: 258 ng/ml, just below the 300 ng/ml cutoff level. (N.T. 3/2/16, pgs. 45-46). Mother did not have appropriate housing. She had lost her apartment because she could not afford to make rent payments, and had moved into a shelter. While living at the shelter Mother continued to tell DHS she was living in the apartment. When DHS discovered this, they made a referral to ARC for housing. (N.T. 3/2/16, pgs. 39-41). Mother did not complete domestic violence counselling. She had only a few classes remaining before completion, but became upset at the outcome of a permanency review hearing and did not return to complete the counselling. (N.T. 3/2/16, pgs. 42, 64, 68). The DHS social worker testified that Mother may have recently gained employment, but had never provided any documentary proof. (N.T. 3/2/16, pgs. 43-44). Mother has not gone to CEU for a dual diagnosis assessment, has not shown proof of her employment, and will soon become homeless when her time in the shelter runs out. (N.T. 3/2/16, pgs. 48, 71-73). Mother has weekly supervised visits, but has never been consistent in attending. (N.T. 3/2/16, pgs. 49, 65). Child is not bonded with Mother, and does not have feelings for Mother. It would not cause Child any irreparable harm to terminate Mother's parental rights. It is in Child's best interest to be adopted by Foster Parents. (N.T. 3/2/16, pgs. 56-57). Child is bonded with Foster Parents and calls them "mom" and "dad". Foster Parents care for all Child's needs. (N.T. 3/2/16, pgs. 51, 57, 67). The agency visitation social worker testified that Mother was never consistent in visiting Child. Mother made twenty-nine visits from January 13, 2014, to December 24, 2015. (N.T. 3/2/16, pgs. 77-78). At visits Mother does not engage with Child. (N.T. 3/2/16, pg. 80). Child has no bond with Mother and does not ask for her. Child is only excited about visits because Mother brings food during visits. (N.T. 3/2/16, pg. 84). The agency social worker took Mother and Child on outings during visits. Mother became angry that the agency social worker would not pay for Mother's meals during visits, and did not attend several visits. (N.T. 3/2/16, pgs. 82-83). The agency social worker stopped supervising visits after December 24, 2015, because Mother engaged in a racist tirade against the social worker, calling her an "African B" with a "dirty mouth" and telling her to "go back to the jungle". (N.T. 3/2/16, pgs. 80-81). Mother testified that she started a new job two weeks before the termination trial. (N.T. 3/2/16, pg. 87). Mother testified that she had only one class remaining in her domestic violence counselling, that she was in a 12-Step program, was sober and was in a recovery house. (N.T. 3/2/16, pgs. 88-89). Mother testified that she had missed visits with Child because of her

work and the weather. (N.T. 3/2/16, pg. 91). Mother had reported suspected abuse by Aunt and Godmother, and felt bonded with Child. (N.T. 3/2/16, pgs. 92-93). Mother denied that she had been discharged from her drug and alcohol treatment program for non-attendance. She then testified that she had been "dropped from the roll" of the program for non-attendance. (N.T. 3/2/16, pgs. 96-97). Mother testified that she has not provided documents to prove her current employment. Mother then testified that she had been employed from the start of the case, and had always provided DHS documentation of her employment. (N.T. 3/2/16, pgs. 102-103). Mother was imprisoned from March 2014 to November 2014. (N.T. 3/2/16, pg. 105). Mother testified that she completed parenting classes in jail and had never been inconsistent in her visitation. (N.T. 3/2/16, pg. 106). Mother testified that she was ready, willing and able to parent Child now, and if reunified she would take Child to the shelter where she currently lived. (N.T. 3/2/16, pg. 107). The court found clear and convincing evidence to terminate Mother's parental rights and change Child's permanency goal to adoption, finding that Child would not suffer any irreparable harm and that it was in Child's best interest to be adopted. (N.T. 3/2/16, pg. 115). On April 1, 2016, Lawrence O'Connor, Esq., counsel for Mother, filed this appeal.[2]

**Discussion:**

Mother raises the following errors on appeal:

1. The evidence was insufficient for the Court to find, by clear and convincing evidence, to change the goal to adoption and terminate Mother's parental rights under 2511(a).

2. The evidence was insufficient for the Courts to find, by clear and convincing evidence, that changing the goal to adoption and termination best serves the child's physical and emotional needs and welfare under 2511(b).

Mother has appealed the involuntary termination of her parental rights. The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa.C.S.A. §2511(a), which provides the following grounds for §2511(a)(1):

(a) **General rule** - The rights of a parent, in regard to a child, may be terminated after a petition is filed on any of the following grounds:

---

[2] The trial court also terminated the parental rights of unknown putative fathers to Child. No unknown fathers have made themselves known in order to appeal the termination.

(1) The parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, has either evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

In proceedings to involuntarily terminate parental rights the burden of proof is on the party seeking termination, which must establish the existence of grounds for termination by clear and convincing evidence. *In re Adoption of Atencio*, 650 A.2d 1064 (Pa. 1994). To satisfy section (a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. However, the six-month time period should not be applied mechanically; instead, the court must consider the whole history of the case. *In re B.N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004). The standard of clear and convincing evidence is defined as testimony that is so clear, direct weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of precise facts in issue. A parent's incarceration does not preclude termination of parental rights if the incarcerated parent fails to utilize the given resources and to take affirmative steps to support a parent-child relationship. *In re D.J.S.*, 737 A.2d 283 (Pa. Super. 1999).

The petition for involuntary termination in this case was filed on November 3, 2014. Mother's FSP objectives were to take parenting classes, attend drug and alcohol and mental health treatment, obtain appropriate housing and attend visits with Child. (N.T. 3/2/16, pgs. 8-9). Mother did not complete any of these objectives during the six months prior to the filing of the petition. (N.T. 3/2/16, pgs. 10-11). Mother was imprisoned for the entire six-month period. (N.T. 3/2/16, pg. 105). Parenting classes as well as drug and alcohol and mental health treatment were all available to Mother in prison, but she did not complete them during her time in prison. (N.T. 3/2/16, pgs. 19, 26-27). Mother was allowed to have visits with Child at the prison. Aunt, who was caretaker for Child during this time, set up a number of visits. Mother attended some of these visits, but rejected others and did not visit Child consistently. Later, Mother's own actions caused her to be placed in solitary confinement, where she was unable to visit Child. (N.T. 3/2/16, pgs. 14-15, 18, 30). Mother's FSP goals have been the same since the start of this case, and she completed none of them prior to the filing of the petition. She failed to use the resources available to her in prison to support a parent-child relationship or advance her ability to parent Child upon release. Even

considering the whole history of the case, Mother has failed to successfully complete her objectives. (N.T. 3/2/16, pgs. 12, 14, 19, 26-27, 34-36, 45-46, 65, 68). As a result the trial court did not abuse its discretion by finding clear and convincing evidence that Mother, by her conduct, had refused and failed to perform parental duties, so termination under this section was proper.

The trial court also terminated Mother's parental rights under 23 Pa.C.S.A. §2511(a)(2). This section of the Adoption Act includes, as a ground for involuntary termination of parental rights, the repeated and continued incapacity, abuse, neglect or refusal of the parent that causes the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. This ground is not limited to affirmative misconduct. It may include acts of refusal to perform parental duties, but focuses more specifically on the needs of the child. *Adoption of C.A.W.*, 683 A.2d 911, 914 (Pa. Super. 1996).

Mother has demonstrated a pattern of noncompliance with her FSP objectives. Mother's FSP objectives were to take parenting classes, attend drug and alcohol and mental health treatment, obtain appropriate housing and attend scheduled visits with Child. (N.T. 3/2/16, pgs. 8-9). After she was released from prison these objectives were updated to include domestic violence counselling. (N.T. 3/2/16, pgs. 34-36). Mother did not complete any objectives prior to her imprisonment. (N.T. 3/2/16, pgs. 10-11). Mother began parenting classes as well as drug and alcohol and mental health treatment in prison, but did not complete them before her release. (N.T. 3/2/16, pgs. 19, 26-27). Mother re-engaged in drug and alcohol treatment on December 18, 2014, but soon stopped attending and was discharged in July 2015. Mother told DHS that she was still attending the program. (N.T. 3/2/16, pgs. 34-36). Mother testified both that she had completed the program and had been discharged for non-attendance. (N.T. 3/2/16, pgs. 96-97). Mother re-engaged in drug and alcohol treatment on December 1, 2015, but subsequently took a random drug screen showing extremely high traces of cocaine: 258 ng/ml, just below the 300 ng/ml cutoff level. (N.T. 3/2/16, pgs. 44, 45-46). Mother did not complete domestic violence counselling. She had only a few classes remaining before completion, but became upset at the outcome of a permanency review hearing and did not return to complete the counselling. (N.T. 3/2/16, pgs. 42, 64, 68). Mother needs income in order to support Child, but DHS does not have any documentation of Mother's employment. (N.T. 3/2/16, pgs. 43-44). Mother testified that she had not provided any

proof of her current employment, but also testified that she had always been employed and had provided DHS documentation of every job she had held. (N.T. 3/2/16, pgs. 102-103). Mother has never been consistent with her visitation. When she was in prison, she rejected a number of scheduled visits. (N.T. 3/2/16, pgs. 12, 14, 15). Following Mother's release, she had weekly supervised visits but never attended consistently. (N.T. 3/2/16, pgs. 49, 65). Mother testified that she missed some visits because of the weather and conflicts with her work schedule, but also testified that she had always consistently attended visits. (N.T. 3/2/16, pgs. 91, 106). Mother has only sporadically had appropriate housing. When Mother lost her apartment just prior to the start of the termination trial, she continued to tell DHS that she was living there. (N.T. 3/2/16, pgs. 39-41). Mother currently lives in a shelter, and testified that she wants to reunify with Child in the shelter. The shelter will only provide housing for ninety days. At the time of the trial Mother had been there for ten weeks, and will soon be homeless. (N.T. 3/2/16, pgs. 48, 71-73, 107). Throughout the life of this case DHS has provided timely referrals and re-referrals to appropriate services, but Mother has never successfully availed herself of those services. (N.T. 3/2/16, pgs. 8-9, 18, 39-40, 42-43, 63). Mother has failed to take affirmative steps to place herself in a position to parent Child. Mother's failure to engage with services and complete her FSP objectives shows that Mother would be unable to remedy the causes of her incapacity in order to provide Child with essential parental care, control or subsistence necessary for his physical and mental well-being. Child needs permanency, which Mother cannot provide. Termination under this section was also proper.

Mother also appeals the trial court's termination of parental rights under 23 Pa.C.S.A. §2511(a)(5), which permits termination when a child was removed, by court or voluntary agreement, and placed with an agency if, for at least six months, the conditions which led to the placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services reasonably available to the parent are not likely to remedy the conditions leading to placement, and termination best serves the child's needs and welfare. DHS, as a child and youth agency, cannot be required to extend services beyond the period of time deemed as reasonable by the legislature or be subjected to herculean efforts. A child's life cannot be put on hold in hope that the parent will summon the ability to handle the responsibilities of parenting. *In re J.T.*, 817 A.2d 509 (Pa. Super. 2001). As a consequence, Pennsylvania's Superior Court has

recognized that a child's needs and welfare require agencies to work toward termination of parental rights when a child has been placed in foster care beyond reasonable temporal limits and after reasonable efforts for reunification have been made by the agency, which have been ineffective. This process should be completed within eighteen months. *In re N.W.*, 851 A.2d 508 (Pa. Super. 2004).

Child in this case has been in DHS custody since August 15, 2013. Child was placed because Mother used drugs and neglected Child. Mother's main obstacle to reunification is that she has not successfully completed any of her FSP objectives. Mother's FSP objectives were to take parenting classes, attend drug and alcohol and mental health treatment, attend domestic violence counselling, obtain appropriate housing and attend scheduled visits with Child. (N.T. 3/2/16, pgs. 8-9, 34-35). Mother began parenting classes as well as drug and alcohol and mental health treatment in prison, but did not complete them before her release. (N.T. 3/2/16, pgs. 19, 26-27). Mother claims she completed parenting classes, but has not provided DHS documentary proof. (N.T. 3/2/16, pgs. 10-11, 48, 106). Mother re-engaged in drug and alcohol treatment on December 18, 2014, but soon stopped attending and was discharged in July 2015. Mother told DHS that she was still attending the program. (N.T. 3/2/16, pgs. 34-36). Mother testified both that she had completed the program and had been discharged for non-attendance. (N.T. 3/2/16, pgs. 96-97). Mother re-engaged in drug and alcohol treatment on December 1, 2015, but subsequently took a random drug screen showing extremely high traces of cocaine: 258 ng/ml, just below the 300 ng/ml cutoff level. (N.T. 3/2/16, pgs. 44, 45-46). Mother did not complete domestic violence counselling. She had only a few classes remaining before completion, but became upset at the outcome of a permanency review hearing and did not return to complete the counselling. (N.T. 3/2/16, pgs. 42, 64, 68). Mother did not provide DHS does with any documentation of Mother's employment. (N.T. 3/2/16, pgs. 43-44). Mother testified that she had not provided any proof of her current employment, but also testified that she had always been employed and had provided DHS documentation of every job she had held. (N.T. 3/2/16, pgs. 102-103). Mother has never been consistent with her visitation. When she was in prison she rejected a number of scheduled visits. (N.T. 3/2/16, pgs. 12, 14, 15). Following Mother's release, she had weekly supervised visits but never attended consistently. (N.T. 3/2/16, pgs. 49, 65). Mother testified that she missed some visits because of the weather and conflicts with her work schedule, but also testified that she

had always consistently attended visits. (N.T. 3/2/16, pgs. 91, 106). Mother got into an argument with the agency social worker supervising her visitation and denigrated the social worker with racist language. After the argument Mother did not attend several visits. (N.T. 3/2/16, pgs. 80-83). Mother has only sporadically had appropriate housing. When Mother lost her apartment just prior to the start of the termination trial, she continued to tell DHS that she was living there. (N.T. 3/2/16, pgs. 39-41). Mother testified that she would reunify with Child at the transitional shelter where she currently lives, but Mother will soon be homeless and does not have alternative housing. (N.T. 3/2/16, pgs. 48, 71-73, 107). Throughout the life of this case DHS has provided timely referrals and re-referrals to appropriate services. (N.T. 3/2/16, pgs. 8-9, 18, 39-40, 42-43, 63). The court found that DHS made reasonable efforts to reunify Child and Mother. (N.T. 3/2/16, pgs. 84, 115). Because of Mother's pattern of not availing herself of services or completing her objectives, the trial court found that Mother was not able to remedy the conditions which led to Child's placement within a reasonable time. Child is currently placed with Foster Parents, who have cared for him for a year. Foster Parents are bonded with Child and provide for all his needs. The court heard testimony that it would be in Child's best interest to remain with Foster Parents and be adopted by them. (N.T. 3/2/16, pgs. 51, 56-57, 67). Mother has been given ample time to place herself in a position to parent Child. Child cannot wait for Mother to decide to parent. The court heard testimony that termination of Mother's parental rights would be in the best interest of the Children. (N.T. 3/2/16, pg. 56). As a result the trial court found that termination of Mother's parental rights was in the best interest of Child for his physical, intellectual, moral and spiritual well-being. Because the trial court made this determination on the basis of clear and convincing evidence, termination under this section was also proper.

The trial court also terminated Mother's parental rights under 23 Pa.C.S.A. §2511(a)(8), which permits termination when:

> The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

This section does not require the court to evaluate a parent's willingness or ability to remedy the conditions which initially caused placement or the availability or efficacy of DHS services offered to the parent, only the present state of the conditions. *In re: Adoption of K.J.,* 938 A.2d 1128, 1133

(Pa. Super. 2009). The party seeking termination must also prove by clear and convincing evidence that the termination is in the best interest of the child. The best interest of the child is determined after consideration of the needs and welfare of the child such as love comfort, security and stability. *In re Bowman*, A.2d 217 (Pa. Super. 1994). See also *In re Adoption of T.T.B.*, 835 A.2d 387, 397 (Pa. Super. 2003).

Child in this case has been in DHS custody since August 15, 2013. Child was placed because Mother used drugs and neglected Child. Since Child's removal Mother has not completed any of her FSP objectives and has not placed herself in a position to parent Child. Mother's FSP objectives were to take parenting classes, attend drug and alcohol and mental health treatment, attend domestic violence counselling, obtain appropriate housing and attend scheduled visits with Child. (N.T. 3/2/16, pgs. 8-9, 34-35). Mother began, but did not complete, parenting classes. (N.T. 3/2/16, pgs. 11, 19, 26-27, 48, 106). Mother began drug and alcohol and mental health treatment in prison, but did not complete the program there. After her release she re-engaged but was discharged for non-attendance. Following a DHS referral she recently re-engaged, but has not completed the program and recently gave a drug screen with extremely high trace levels of cocaine. (N.T. 3/2/16, pgs. 19, 26-27, 34-36, 44-46, 96-97). Mother engaged with domestic violence counselling, but stopped attending after the result of a permanency review hearing upset her. (N.T. 3/2/16, pgs. 42, 64, 68). Mother did not show DHS proof that she is employed and can financially support Child if they are reunified. (N.T. 3/2/16, pgs. 43-44, 102-103). Mother has only sporadically had appropriate housing, and has misinformed DHS about where she is living. This prevented DHS from supplying Mother with a timely ARC referral for housing. (N.T. 3/2/16, pgs. 39-43). Mother is currently living at a transitional shelter, and will soon be homeless. (N.T. 3/2/16, pgs. 48, 71-73, 107). Mother does not visit consistently. She rejected scheduled visits in prison. She attended twenty-nine of her weekly supervised visits over a two-year period. (N.T. 3/2/16, pgs. 12, 14, 15, 78). Mother engaged in a racist argument with the social worker supervising visitation, and did not attend several visits. (N.T. 3/2/16, pgs. 80-83). Termination of Mother's parental rights is in Child's best interest. (N.T. 3/2/16, pgs. 56). Child has been in care for thirty-one months, and needs permanency. Child is currently placed with Foster Parents, who have cared for him for a year. Foster Parents are bonded with Child and provide for all his needs. Child calls Foster Parents "mom" and "dad". The court heard testimony that it would be in Child's

best interest to remain with Foster Parents and be adopted by them. (N.T. 3/2/16, pgs. 51, 56-57). The conditions leading to removal continue to exist, as Mother has failed to successfully complete her FSP objectives. The testimony of DHS witnesses was unwavering and credible. Mother is not ready, willing or able as of today to parent Child. Because the record contains clear and convincing evidence, the trial court did not abuse its discretion and termination under this section was also proper.

After a finding of any grounds for termination under section (a), the court must, under 23 Pa.C.S.A. §2511(b), also consider what - if any - bond exists between parent and child. *In re Involuntary Termination of C.W.S.M. and K.A.L.M.*, 839 A.2d 410, 415 (Pa. Super. 2003). The trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship". *In re Adoption of T.B.B.* 835 A.2d 387, 397 (Pa. Super. 2003). In assessing the parental bond, the trial court is permitted to rely upon the observations and evaluations of social workers. *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008). In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis depends on the circumstances of the particular case. *In re K.Z.S.* at 762-763. However under 23 Pa.C.S.A. §2511(b), the rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical, if found to be beyond the control of the parent.

The agency social worker supervising visitation testified that Mother does not engaged with Child during visits. (N.T. 3/2/16, pg. 80). Mother had only attended twenty-nine of her weekly supervised visits, and has never attended consistently. (N.T. 3/2/16, pgs. 15, 49, 77-78). Child does not ask for Mother when she misses visits. (N.T. 3/2/16, pg. 84). The DHS social worker testified that Mother and Child do not have a bond, and there would be no irreparable harm to Child if Mother's parental rights were terminated. (N.T. 3/2/16, pgs. 56-57). It would be in Child's best interest to be adopted by Foster Parents, who have cared for Child for a year and provide a safe and permanent home. They take care of all of Child's needs. Child is bonded with Foster Parents, and calls them "mom" and "dad". (N.T. 3/2/16, pgs. 51, 56-57, 67). Consequently, the court did not abuse its discretion when it found that it was clearly and convincingly established that there was no parental bond, and that termination of Mother's parental rights would not destroy an existing beneficial relationship.

Mother also alleges that the court erred in changing Child's permanency goal from reunification to adoption. In a change of goal proceeding, the child's best interest must be the focus of the trial court's determination. The child's safety and health are paramount considerations. *In re A.H.*, 763 A.2d 873 (Pa. Super. 2000). Pennsylvania's Juvenile Act recognizes family preservation as one of its primary purposes. *In the Interest Of R.P. a Minor,* 957 A.2d 1205 (Pa. Super. 2008). As a result, welfare agencies must make efforts to reunify the biological parents with their child. Nonetheless, if those efforts fail, the agency must redirect its efforts toward placing the child in an adoptive home. Agencies are not required to provide services indefinitely when a parent is unwilling or unable to apply the instructions received. *In re R.T.*, 778 A.2d 670 (Pa. Super. 2001). The trial court should consider the best interest of the child as it exists presently, rather than the facts at the time of the original petition.

The court heard credible testimony that Mother is not currently ready or able to parent Child. (N.T. 3/2/16, pg. 56). Mother has not completed any of her FSP objectives. (N.T. 3/2/16, pgs. 10-11, 34, 41, 42, 48, 49, 77). She does not have appropriate housing. (N.T. 3/2/16, pgs. 39-41, 48). She does not consistently attend visits. (N.T. 3/2/16, pgs. 15, 49, 65, 77-78, 91). Mother stopped attending visits for several weeks because of her anger at the agency social worker, placing her own feelings above the needs of Child. (N.T. 3/2/16, pgs. 80-83). There is no bond between Mother and Child. (N.T. 3/2/16, pgs. 56-57). Child has been in a safe and permanent home with Foster Parents for a year. Foster parents care for all of Child's needs. Child is bonded with them and calls them "mom" and "dad". It would be in Child's best interest to remain with Foster Parents and be adopted by them. (N.T. 3/2/16, pgs. 51, 56-57, 67). The record established clear and convincing evidence that the change of permanency goal from reunification to adoption was proper.

**Conclusion:**

For the aforementioned reasons, the court properly found that DHS met its statutory burden by clear and convincing evidence regarding termination of Mother's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b) since it would best serve Child's emotional needs and welfare. The court also properly found that changing Child's permanency goal from reunification to adoption was in Child's best interest. The trial court's termination of Mother's parental rights and change of goal to adoption was proper and should be affirmed.

By the court,

Joseph Fernandes J.

# IN THE COURT OF COMMON PLEAS
# FOR THE COUNTY OF PHILADELPHIA
# FAMILY COURT DIVISION

| | | |
|---|---|---|
| In the Interest of A.E., a Minor | : | CP-51-DP-0001622-2013 |
| | : | CP-51-AP-0000589-2014 |
| | : | |
| | : | FID: 51-FN-459064-2009 |
| | : | |
| APPEAL OF: S.E., Mother | : | 1142 EDA 2016 |

## PROOF OF SERVICE

I hereby certify that this court is serving, today, June 2, 2016, the foregoing Opinion, by regular mail, upon the following persons:

Courtney Norella, Esq.
City of Philadelphia Law Dept.
1515 Arch Street, 16th Floor
Philadelphia, PA 19102
Attorney for D.H.S.

Lawrence O'Connor, Esq.
2301 Cherry Street #6A
Philadelphia PA 19103
Counsel for Mother

James Martin, Esq.
1800 JFK Blvd. Suite 300
Philadelphia PA 19103
Child Advocate

Clair Stewart, Esq.
21 South 12th Street
Philadelphia PA 19107
Counsel for Father

By: _____

Turner N. Falk
Law Clerk to the Hon. Joseph L. Fernandes
Philadelphia Court of Common Pleas, Family Division
1501 Arch St, Room 1431
Philadelphia, Pa. 19102  T: (215) 686-2660