J-S58045-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: A.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: D.D., NATURAL MOTHER | : | |
| | : | |
| | : | No. 1040 WDA 2019 |

Appeal from the Order Entered June 20, 2019
In the Court of Common Pleas of Bedford County Orphans' Court at
No(s):  10 AD 2018

| | | |
|---|---|---|
| IN RE: A.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: D.D., NATURAL MOTHER | : | |
| | : | |
| | : | No. 1041 WDA 2019 |

Appeal from the Order Entered June 20, 2019
In the Court of Common Pleas of Bedford County Orphans' Court at
No(s):  9 AD 2018

| | | |
|---|---|---|
| IN RE: G.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: D.D., NATURAL MOTHER | : | |
| | : | |
| | : | No. 1042 WDA 2019 |

Appeal from the Order Entered June 20, 2019
In the Court of Common Pleas of Bedford County Orphans' Court at
No(s):  No. 8 AD 2018

J-S58045-19

BEFORE: PANELLA, P.J., BENDER, P.J.E., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                    **FILED DECEMBER 19, 2019**

D.D. ("Mother") appeals the June 20, 2019 Orders involuntarily terminating her parental rights to her sons, G.D. a/k/a G.M.D. (born June 2014), A.D. a/k/a A.F.D. (born May 2015), and A.D. a/k/a A.R.D. (born January 2017) ("Children").[1]  Because the record supports the decision of the orphans' court, we affirm the Orders.

**FACTS AND PROCEDURAL HISTORY**

We glean the following factual and procedural history from the certified record.  The family first became involved with Bedford County Children and Youth Services ("BCCYS") in 2015 based on allegations that A.F.D. was born with Subutex and benzodiazepine in his system.   A.F.D. was adjudicated dependent on May 11, 2015, with BCCYS maintaining protective supervision while A.F.D. remained in Mother's home.  On December 18, 2015, both G.M.D. and A.F.D. were placed in foster care.  G.M.D. was adjudicated dependent December 30, 2015.  G.M.D. and A.F.D. were returned to Mother's custody on January 30, 2017.  Thereafter, Children were removed from Mother's care on July 10, 2017, and adjudicated dependent on July 18, 2017. Children were removed from Mother's care as a result of Mother's incarceration for shoplifting while under the influence of drugs.

_____

[1] The court entered Orders voluntarily terminating the parental rights of Children's father, A.D. ("Father").   Father did not appeal the Orders terminating his parental rights, nor has he participated in this appeal.

Initially, Mother made some progress towards reunification. However, by a May 22, 2018 Permanency Review Hearing, Mother was minimally compliant with the permanency plan, as she had not obtained stable housing, was fired from her employment, was difficult to reach for random drug tests, and tested positive for cocaine and heroin on May 3, 2018.[2]

On June 22, 2018, BCCYS filed Petitions for Involuntary Termination of Parental Rights/Change of Goal to Adoption. The orphans' court conducted a hearing on the Petitions on June 19, 2019. BCCYS presented the testimony of Terry O'Hara, Ph.D., who the parties stipulated is an expert in forensic psychology, and testified regarding interactional and psychological evaluations he performed with Mother, Children, and Children's foster parents; Tracy Lee Clapper, Mother's visitation supervisor; Brianna Beach, a BCCYS caseworker; and Kathy Nail, a therapist at Recovery Concepts. Mother did not appear for the hearing. However, her counsel attended the hearing.

By Orders entered June 20, 2019, the court involuntarily terminated Mother's parental rights to Children pursuant to 23 Pa.C.S. § 2511(a)(2), (5),

_____

[2] As the case progressed, Mother failed to appear for numerous drug screens and, when she did appear, often tested positive for illicit substances, including benzodiazepines, cocaine, and marijuana. At times, Mother appeared at visits under the influence of drugs. Further, Mother lived at numerous different locations during Children's time in care. By April 1, 2019, Mother had no compliance with the permanency plan, as Mother did not have stable employment or housing, failed multiple random drug tests, did not communicate with BCCYS, and attended visitation sporadically.

and (b). Mother timely filed Notices of Appeal and Concise Statements of Errors Complained of on Appeal.[3]

**ISSUE ON APPEAL**

Mother raises the following issue on appeal: "Whether the trial court erred/abused its discretion by determining that termination of [Mother's] parental rights would best serve the developmental, physical, and emotional needs and welfare of [Children] under 23 Pa.C.S.A. § 2511(b), as the sum of the evidence showed [Children have] a strong, beneficial relationship with [Mother]?" Mother's Brief at 5.

**LEGAL ANALYSIS**

In reviewing cases involuntarily terminating parental rights, appellate courts must accept the findings of fact and credibility determinations of the orphans' court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id*. (citations omitted). Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result. *In re Adoption of Atencio,* 650 A.2d 1064, 1066 (Pa. 1994).

> We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the

---

[3] This Court, acting *sua sponte*, consolidated Mother's appeals.

evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73–74 (Pa. Super. 2004) (citations omitted).

We defer to the orphans' court that often has "first-hand observations of the parties spanning multiple hearings." *In re T.S.M*., *supra* at 267 (citations and quotation marks omitted). Importantly, "[t]he court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time . . . in which to **complete** the process of either reunification or adoption for a child who has been placed in foster care." *In re Adoption of R.J.S.,* 901 A.2d 502, 513 (Pa. Super. 2006) (emphasis in original; citations omitted).

In addressing Petitions to Involuntarily Terminate Parental Rights, the Adoption Act[4] requires courts to conduct a bifurcated analysis. Pursuant to Section 2511, the court first focuses on the conduct of the parent. If the party seeking termination presents clear and convincing evidence that the parent's conduct meets one of the grounds for termination set forth in Section 2511(a), then the court will analyze whether termination of parental rights will meet the needs and welfare of the child, *i.e*., the best interests of the child, as provided in Section 2511(b). 23 Pa.C.S. § 2511(a) and (b); *In re L.M.*, 923

---

[4] 23 Pa.C.S. § 2101-2938.

A.2d 505, 511 (Pa. Super. 2007). One major aspect of the needs and welfare analysis concerns the nature and status of the child's emotional bond with the parent, with close attention paid to the effect on the child of permanently severing any such bond. *Id.* at 511 (citations omitted).

While the orphans' court here found that BCCYS met its burden of proof under 23 Pa.C.S. § 2511(a)(2) and (5), as well as (b), Mother only challenges the orphans' court's conclusions with respect to Section 2511(b),[5] which provides as follows:

> **§ 2511. Grounds for involuntary termination**
>
> * * *
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

---

[5] Mother waived any challenge to 23 Pa.C.S. § 2511(a) and the subsections thereof by failing to challenge that section in her Concise Statements and Brief. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his or her concise statement of errors complained of on appeal and the statement of questions involved in his or her brief on appeal).

**Termination Pursuant to Section 2511(b)**

With respect to Section 2511(b), we consider whether termination of parental rights will best serve Children's developmental, physical, and emotional needs and welfare. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Id.* "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

It is sufficient for the orphans' court to rely on the opinions of social workers and caseworkers when evaluating the impact that termination of parental rights will have on a child. *In re Z.P.*, *supra* at 1121. The orphans' court may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. *See In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011); *see also In re T.D.*, 949 A.2d 910, 920–23 (Pa. Super. 2008) (affirming the termination of parental rights where "obvious emotional ties exist between T.D. and Parents, but Parents are either unwilling or unable to satisfy the irreducible minimum requirements of parenthood," and where preserving the parents' rights would prevent T.D. from being

adopted and attaining permanency). Ultimately, the concern is the needs and welfare of a child. *In re Z.P.*, *supra* at 1121.

Mother argues that the orphans' court erred in terminating her parental rights pursuant to Section 2511(b) because she shares a strong, beneficial bond with Children that could result in emotional damage to Children if the bond is broken. Mother's Brief at 11. Mother contends that Dr. O'Hara testified that Mother exhibited positive parenting skills and showed the ability to nurture Children. *Id.* at 11-12. Further, Mother asserts that Dr. O'Hara testified that Mother loves Children and they interact well together. *Id.* at 12. Based on her bond with Children, and the emotional damage that could result if the bond were broken, Mother argues that the court erred in involuntarily terminating her parental rights. *Id.* at 13.

At the conclusion of the termination hearing, the orphans' court entered its findings of fact and conclusions of law on-the-record. The court credited testimony that Mother continued to use drugs and failed to seek meaningful treatment. Findings of the Court, 6/19/19, at 5. Further, the court observed that Mother did not maintain housing, did not stay in contact with BCCYS, and was inconsistent in visiting Children. *Id.* With respect to Mother's relationship with Children, the court noted the testimony of Dr. O'Hara that there was a bond between Mother and Children and that there would be some detriment to Children if Mother's rights were terminated. *Id.* at 6. However, the court also credited Dr. O'Hara's testimony that Children's strong bond with their

pre-adoptive foster parents could overcome any detriment from terminating Mother's parental rights. *Id.* Based on the court's concerns regarding Mother's conduct, the court concluded that continued contact with Mother could endanger Children. *Id.* at 6-7. The court determined that termination of Mother's parental rights best served the developmental, physical, and emotional needs of Children. *Id.* at 7.

Our review of the record supports the orphans' court's findings. The orphans' court acknowledged the testimony of Dr. O'Hara that a bond existed between Mother and Children. The court also considered the substantial evidence of Mother's ongoing instability and drug use, as well as Dr. O'Hara's testimony that any detriment to Children from the termination of Mother's parental rights could be mitigated by their strong relationship with their pre-adoptive foster parents. Ultimately, the court determined that the termination of Mother's parental rights was in Children's best interests. We do not discern an error of law or abuse of discretion with respect to the orphans' court's conclusion, and thus affirm the court's determination that involuntarily terminating Mother's parental rights is in the best interests of Children.

Orders affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/19/2019