J-S34015-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: D.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: N.M., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 242 WDA 2019 |

Appeal from the Decree Dated January 14, 2019
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
CP-07-DP-0000014-2011,
No. 35 AD 2018

| | | |
|---|---|---|
| IN RE: D.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: N.M., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 243 WDA 2019 |

Appeal from the Decree Entered January 14, 2019
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
CP-07-DP-0000012-2011

| | | |
|---|---|---|
| IN RE: B.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: N.M., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 244 WDA 2019 |

Appeal from the Decree Dated January 14, 2019
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
CP-07-DP-0000013-2011

J-S34015-19

BEFORE:   DUBOW, J., McLAUGHLIN, J., and COLINS*, J.

MEMORANDUM BY DUBOW, J.:                        FILED AUGUST 16, 2019

N.M. ("Mother") appeals the January 14, 2019 Decrees involuntarily terminating her parental rights to her minor sons, De.M. (born September 2007) and Da.M. (born October 2010), and her minor daughter, B.N.M. (born January 2009) ("Children").[1]   She challenges only the court's determination under 23 Pa.C.S. § 2511(b) that termination of her parental rights serves the Children's best interests.  Because the record supports the decision of the trial court, we affirm the Decrees.

FACTS AND PROCEDURAL HISTORY

The trial court summarized the procedural and factual history of this matter as follows:

> The procedural history of the underlying dependency actions establishes that these subject children have been in and out of the dependency system for over eight (8) years.  The dependency proceeding initially began in 2010 when the [m]other left the children w[a]ndering in the street.  The two (2) most recent permanency review orders issued by the [c]ourt prior to the termination of parental rights decree provide detailed reasoning as to why the Petition for Termination of Parental Rights was appropriate.  The [c]ourt issued a Permanency Review Order on July 31, 2018 after extensive testimony by the agency.  In this Permanency Review Order we changed the goal for the children from return home to the parents to adoption.[2]   We found the

_____

[1] The court also involuntarily terminated the parental rights of Children's Father, D.L.H. ("Father").  Father did not appeal the Decrees terminating his parental rights, nor has he participated in this appeal.

[2] There is no indication in the certified record that Mother appealed the goal change orders

\* Retired Senior Judge assigned to the Superior Court.

> progress of the [m]other towards alleviating the circumstances which necessitated the original placement to be minimal.

Trial Ct. Op., 3/8/19, at 5.

Specifically, Mother's minimal progress included her inability to establish independent and appropriate housing. Id. at 6. Additionally, Mother's and Father's on-and-off-again relationship made it difficult to determine when they were residing together. Id. The relationship between Mother and Father was concerning, as domestic violence between Mother and Father created safety risks for Children. Id. at 6-7.

Further, on September 5, 2017, Mother was found wandering in the street under the influence of bath salts while the children were left at home with known drug addicts. Id. at 7. As a result, Mother had pending criminal charges for endangering the welfare of her children. Id. A psychological evaluation performed by Terry O'Hara, Ph.D., determined that there was a poor prognosis for Mother to be able to successfully care for Children if she did not engage in intensive substance abuse treatment.[3] Id. at 9. Despite a history of addiction, Mother did not comply with her drug and alcohol treatment, and often failed to produce samples for drug tests. Id. at 8.

---

[3] Asked whether Children's need for safety, stability and permanence outweighed any detriment that might be caused if Mother's parental rights were terminated, Dr. O'Hara opined, "I think it's a difficult question to answer at this point. I think there would be evidence I think in my opinion that those factors of stability, safety and security and permanency would outweigh a detriment due to the fact that these children are at very crucial developmental stages." N.T., Permanency Review Hearing, 1/22/18, at 9.

Moreover, Mother failed to set up or cooperate with recommended services for Da.M.'s autism or De.M.'s diabetes, and Mother struggled to control Da.M.'s behaviors and to manage De.M.'s diabetes. Id. at 9. Mother also had difficulty managing all three children at one time. Id. Mother's attendance at visitation was inconsistent.[4] Id. at 7-8.

The court summarized Mother's participation as follows:

> [Mother's] cooperation with services for over a year has been sporadic. [Mother] has been unable to address her own issues and the circumstances that led to the children's placement, to wit: ongoing [drug and alcohol] issues, ongoing criminal charges relating to child endangerment of her children, lack of housing, lack of stable income, domestic violence, inability to safely care for all three of her children and ongoing mental health issues. These issues have been chronic over time and based on the evidence to date, it is not likely that [Mother] will change or resolve the issues within a reasonable period of time.

Id. at 6.

On September 27, 2018, Blair County Children Youth and Families ("BCCYF") filed Petitions to involuntarily terminate Mother's parental rights to Children. The court held a hearing on the Petitions on January 9, 2019.[5] At

_____

[4] At a permanency review hearing on October 23, 2018, the court determined Mother's situation remained largely unchanged. Trial Ct. Op., 3/8/19, at 9. Mother was suspected of using bath salts on September 12, 2018. Id. at 10. A drug test was administered but the results revealed that the specimen was diluted. Id.

[5] The court appointed a Guardian Ad Litem, Attorney Maryann Probst, as well as legal counsel, Attorney Gerald Nelson, to represent Children at the termination proceedings.

the hearing, the court, without objection, incorporated the extensive dependency proceedings involving Children. BCCYF then presented testimony from Ronna Holliday, the BCCYF caseworker. Mother, represented by counsel, testified on her own behalf. Further, Children's legal counsel and their Guardian Ad Litem testified.

On January 14, 2019, the court entered Decrees terminating Mother's parental rights to Children pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b). Thereafter, Mother filed timely Notices of Appeal and Concise Statements of Errors Complained of on Appeal. This Court, acting sua sponte, consolidated Mother's appeals.

ISSUE ON APPEAL

Mother raises the following issue on appeal: "Whether the trial court erred/abused its discretion by determining that termination of [Mother's] parental rights would best serve the developmental, physical, and emotional needs and welfare of [Children] under 23 Pa.C.S. § 2511(b), as the sum of the evidence showed [Children have] a strong, beneficial relationship with [Mother]?" Mother's Brief at 5.

LEGAL ANALYSIS

In reviewing cases involuntarily terminating parental rights, appellate courts must accept the findings of fact and credibility determinations of the trial court if the record supports them. In re T.S.M., 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." Id.

(citations omitted). Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result. In re Adoption of Atencio, 650 A.2d 1064, 1066 (Pa. 1994).

> We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

In re M.G., 855 A.2d 68, 73–74 (Pa. Super. 2004) (citations omitted).

We defer to the trial court that often has "first-hand observations of the parties spanning multiple hearings." In re T.S.M., supra at 267 (citations and quotation marks omitted). Importantly, "[t]he court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time . . . in which to complete the process of either reunification or adoption for a child who has been placed in foster care." In re Adoption of R.J.S., 901 A.2d 502, 513 (Pa. Super. 2006) (emphasis in original; citations omitted).

In addressing Petitions to Involuntarily Terminate Parental Rights, the Adoption Act[6] requires courts to conduct a bifurcated analysis. Pursuant to

_____

[6] 23 Pa.C.S. § 2101-2938.

Section 2511, the court first focuses on the conduct of the parent. If the party seeking termination presents clear and convincing evidence that the parent's conduct meets one of the grounds for termination set forth in Section 2511(a), then the court will analyze whether termination of parental rights will meet the needs and welfare of the child, i.e., the best interests of the child, as provided in Section 2511(b). 23 Pa.C.S. § 2511(a) and (b); In re L.M., 923 A.2d 505, 511 (Pa. Super. 2007). "One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond." Id. at 511 (citations omitted).

While the trial court here found that BCCYF met its burden of proof under 23 Pa.C.S. § 2511(a)(2), (5), and (8), as well as (b), Mother only challenges the trial court's conclusions with respect to Section 2511(b),[7] which provides as follows:

§ 2511. Grounds for involuntary termination

\* \* \*

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of

_____

[7] Mother waived any challenge to 23 Pa.C.S. § 2511(a) and the subsections thereof by failing to challenge that section in her Concise Statements and Brief. See Krebs v. United Refining Company of Pennsylvania, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his or her concise statement of errors complained of on appeal and the statement of questions involved in his or her brief on appeal).

environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

Termination pursuant to Section 2511(b)

With respect to Section 2511(b), we consider whether termination of parental rights will best serve Children's developmental, physical, and emotional needs and welfare. See In re Z.P., 994 A.2d 1108, 1121 (Pa. Super. 2010). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." Id. "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." In re B.,N.M., 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

It is sufficient for the trial court to rely on the opinions of social workers and caseworkers when evaluating the impact that termination of parental rights will have on a child. In re Z.P., supra at 1121. The trial court may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. See In re N.A.M., 33 A.3d 95, 103 (Pa.

Super. 2011); see also In re T.D., 949 A.2d 910, 920–23 (Pa. Super. 2008), appeal denied, 601 Pa. 684, 970 A.2d 1148 (2009) (affirming the termination of parental rights where "obvious emotional ties exist between T.D. and Parents, but Parents are either unwilling or unable to satisfy the irreducible minimum requirements of parenthood," and where preserving the parents' rights would prevent T.D. from being adopted and attaining permanency). Ultimately, the concern is the needs and welfare of a child. In re Z.P., supra at 1121.

Mother argues that the trial court erred in its consideration of Section 2511(b) because the record establishes a bond between Mother and Children, and does not contain sufficient evidence as to the effect of severing the bond between Mother and Children. Mother's Brief at 10-11. Mother contends that the record only supports a finding that severing the bond would have a detrimental effect on Children because of the positive relationship Children have with her. Id. at 11.

In rejecting Mother's argument, the trial court wrote:

> The [c]ourt believes that the record is sufficient to establish that it is in the best interest of the children for the parental rights of the Mother to be terminated. We acknowledge that the children have a bond with the [m]other. However, the inability or unwillingness of the [m]other to rectify several deficiencies causes the [c]ourt to continue to believe that the needs and welfare of the children support termination. Specifically, the [m]other has not refrained from drug usage having recently used illegal controlled substances in 2018. The [m]other has not maintained stable housing and stable employment. Contrary to Dr. O'Hara's recommendations, the [m]other has also not completed services recommended by him which included domestic violence

counseling. She has also failed to follow through and appropriately accept reunification services from [Family Intervention Crisis Services]. Despite the fact that the children have been in and out of the dependency system for a substantial period of time, the [m]other has failed to rectify these problems and the [c]ourt believes that if the Termination of the Parental Rights Petition would not be granted, that this cyclical history would continue. . . . In this case, we believe that it is in the best interest of the children to have stability and we believe that the termination of parental rights is necessary for this to occur.

Trial Ct. Op., 3/8/19, at 11-12.

Our review of the record supports the trial court's findings. Contrary to Mother's argument, the trial court acknowledged the bond between Mother and Children, and determined that providing Children safety and stability through the termination of Mother's parental rights was in Children's best interests. We do not discern an error of law or abuse of discretion with respect to the trial court's conclusion, and thus affirm the court's determination that involuntarily termination of Mother's parental rights is in the best interests of Children.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/16/2019